### JOHN DUNCAN v. THE STATE.

#### No. 3972. Decided March 8, 1916.

**Theft of Cattle—Jury and Jury Law—Formed Opinion.**

Where, upon trial of theft of cattle, the conviction depended upon circumstantial evidence, and the record on appeal showed that one of the jurors upon his voir dire examination stated that he had formed no opinion as to the guilt or innocence of defendant, and it was shown upon motion for new trial that before he was called as a juror he had stated that he had already formed

an opinion and therefore he would not have to sit on the jury, and had also made the declaration that the defendant was the man who had stolen the alleged cattle, he should not have sat upon the jury, and a new trial should have been granted, as in a felony case defendant can not even waive a jury, and the law provides that he shall be tried by an impartial jury. Following Sorrell v. State, 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299, and other cases.

Appeal from the District Court of Parker. Tried below before the Hon. F. O. McKinsey.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hood & Shadle* and *Peden & Lipscomb,* for appellant.—On question of incompetent juror: Nash v. State, 2 Texas Crim. App., 362; Long v. State, 10 id., 186; Graham v. State, 28 id., 582; Washburn v. State, 31 Texas Crim. Rep., 352; Harris v. State, 72 Texas Crim. Rep., 117, 161 S. W. Rep., 125.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of cattle theft, and his punishment assessed at two years confinement in the State penitentiary.

There are several bills of exception in the record, but after a careful review of them we are of the opinion none of them present error, unless it is the bill contending that William Golden was not a competent juror. It appears that on the voir dire examination of the jury this juror answered that he heard there was such a case, but he had formed no opinion as to the guilt or innocence of the defendant. Upon the hearing of the motion for a new trial, under allegations that this juror had formed and expressed an opinion prior to the time he was selected on the jury, evidence was heard and is embraced in the eighth bill of exceptions. The juror was called as a witness, and his testimony would tend to show that he had formed and expressed no opinion, and what he said to Will Hughes about sending appellant to the penitentiary was said in a joking way, and the way he explains it no serious consideration should be paid to it. However, the defendant introduced M. A. Kyle, who testified that shortly after Mr. Chew had lost his cattle, he and young Robert Chew were passing appellant's house and had a conversation with appellant, and in that conversation Chew told appellant they had found two of the cattle, and his father was going to west Texas, after the other two, and appellant had been arrested charged with the theft of the cattle. That the juror then said two of his cattle had been taken out of his pasture, and "it might have been Duncan, appellant, trying to get my cows," and remarked, "Duncan is the man who stole your pa's cows, and we don't want that kind of a man around here." Mr. Hughes testifies that after this, and a week before the trial, he was working with Mr. Golden at a sorghum mill and the juror told him he was on the jury for the next week,

and they got to talking about the Duncan case, and "he said he would not have to sit on Mr. Duncan's trial because he had already formed an opinion." The juror was again called to the stand and admitted he had a conversation with Kyle and young Robert Chew, and said he did not recollect what was said, but he had no recollection of saying that "Duncan is the man that got your pa's cattle." Young Chew was not called as a witness by either the State or the defendant.

If Kyle and Hughes' testimony is worthy of credit, certainly the juror was not a competent juror. We have the juror's testimony denying a portion of their testimony, admitting other portions, and not remembering as to the remainder. The trial court overruled the motion on this ground, and we are loath to disturb his finding, as this is a matter largely addressed to his discretion. However, under the laws of this State a man is entitled to a trial by a fair and impartial jury, and where the question of whether he has been accorded such a trial is raised, and there is a question of grave doubt raised, we are of the opinion the doubt should be resolved in his favor. If others had been present and testified that no such conversation took place that Kyle and Hughes swear did occur, we would not disturb the finding of the judge on the conflict of the testimony. But when we take the testimony of Mr. Golden on this hearing, he states he answered, when being examined as to his qualifications as a juror, that he had no opinion as to the guilt or innocence of the accused, yet on this hearing he testifies: "I had an opinion, of course, in one way, but I did not have a fixed opinion." He also admits that he made the statement testified to by Mr. Kyle about Duncan running his cattle out, trying to get them.

Under such a state of facts we can not say that appellant has been tried by a wholly fair and impartial jury. This is a case depending on circumstantial evidence, and while the evidence, in our opinion, is of that force and cogency to authorize a verdict of guilty, yet we are not the ones authorized by law to pass on that question. Our laws provide that even the defendant can not waive a jury in a felony case, and, of course, this means a jury of men who have no fixed opinion as to the guilt of the person on trial. In Sorrell v. State, 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299, this court, speaking through Judge Williams, says: "One improper juror destroys the integrity of the verdict." In White's Ann. Proc., section 4, it is said:

"Among English speaking peoples, 'the right of trial by jury' has always been considered, and Sir William Blackstone justly denominates it 'the palladium of civil right.' Our Constitution requires that it 'shall remain inviolate.' (Bill of Rights, sec. 15.) As an essential factor in the protection of the life and liberty of the citizen, it is considered so important that our laws declare, that 'the defendant to a criminal prosecution for any offense may waive any right secured to him by law except the right of trial by jury in a felony case.' But he is not only entitled to a trial by jury, but our Constitution characterizes the kind of jury which is to try him, and says, 'the accused *shall have a* speedy public trial *by an impartial jury.*' Not only so, but it is also

the will and policy of the law that the 'trial shall be alike fair and impartial to the accused and the State.' An impartial jury and a fair trial is what the State demands, and in her demands she is no respecter of persons. She has one law for all—the high and the low, the rich and the poor, the friendless, the most debased and hardened of criminals. Steagald v. State, 22 Texas Crim. App., 464; Massey v. State, 31 Texas Crim. Rep., 371. The language of the provision of the Bill of Rights is that the accused 'shall have a fair trial by an impartial jury.' 'Impartial' means 'not partial; not favoring one party more than another, unprejudiced, disinterested, equitable, just.' To be impartial means the party, his cause or the issues involved in his cause, should not—must not—be prejudged. The accused is entitled to a fair trial by an impartial jury, and there is no other method provided by which he can be tried and punished."

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*