JOHN HILLYARD v. THE STATE.

No. 13820. Delivered January 14, 1931.
Reported in 34 S. W. (2d) 601.

The opinion states the case.

*J. W. Thomas* and *De Witt Bowner,* both of Belton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is rape; the punishment, confinement in the penitentiary for five years.

The testimony of prosecutrix, Dessie Petty, was to the effect that appellant took her to the town of Kemper, procured some person she did not know who read from a paper in their presence, and advised her that they were being married. She testified further that after this ceremony had been performed appellant told her she was his wife, and that she believed him. It appears that appellant had been courting prosecutrix for several months. The testimony further discloses that appellant had a wife then living, from whom he had secured no divorce. It was the state's version, given support in the testimony of prosecutrix, that prosecutrix lived with appellant and permitted him to have sexual intercourse with her because of her belief that she was his wife. Appellant took prosecutrix to the home of his mother, where he lived with her for several weeks. Testifying in his own behalf, appellant denied that he had gone through any character of a ceremony in an effort to make prosecutrix believe they had been married. He admitted that he had asked the mother and father of prosecutrix to give their consent to his marriage to prosecutrix, but declared that he had advised them that he could not marry her until he had obtained a divorce from his wife. He testified that he carried prosecutrix to his mother's home and lived with her because of the fact that she was willing to go with him. He denied that he stated to anybody that prosecutrix was his wife.

There was sharp conflict between the testimony of appellant and that of the father and mother of prosecutrix touching appellant's status at the time he requested their consent to his marriage to prosecutrix. As indicated hereinbefore, appellant testified that the marriage was to take place at some future date on account of the fact that he had not secured a divorce from his wife. The parents

of prosecutrix denied that appellant stated to them that he had not secured a divorce from his wife. The mother of prosecutrix testified that appellant said at the time he asked for her daughter that he had been divorced. She testified further that appellant told her after he began living with her daughter that they were married.

In his motion for a new trial appellant averred that he had not had a trial before a fair and impartial jury in that one juror had heard the facts of the case discussed, and was prejudiced against him. Upon a hearing had upon the motion, the juror testified as follows:

"I testified on my voir dire that I had no opinion in the case, and I don't think that, although I didn't know the prosecutrix until she came on the witness stand and it then developed that I knew her and knew the facts as related, I don't think that influenced me or caused me to have an opinion. I knew the young lady's mother and father and two of the boys and one of the girls, but I didn't know anything about this girl. Prior to the trial I heard her father say that this boy here (defendant) and the girl were married. I believed that statement; had no reason to disbelieve it. After I was secured as a juror, I recalled the incident out there that I mentioned, and I believe I said when we were trying to get a verdict, I believe I do recall that they were living out there but that I didn't recall it until this case was called; I didn't know who they were. I believe I mentioned the fact that they were living out there on our place at the time this happened. I had said her folks were living there. I stated in the jury room that the old folks were good people, nice people, but I don't know that there was any discussion of that; I know I spoke of that. I recalled her father's remark that they were married, but I don't think that instance was mentioned in the jury room, but I remember the remark the old man made, and I know my father-in-law and myself were discussing that they took one more of the old man's hands away from him."

It appears that the father of prosecutrix was a tenant on the juror's farm. Relative to the remark made to him by the father of prosecutrix, the juror testified that he was out at the farm to repair a house when prosecutrix's father stated to him that his daughter had gotten married. Several of the jurors testified that they did not remember having heard the juror state in the jury room that he knew prosecutrix's father and mother and they were good people. Others testified that they did not hear the statement.

A fair and impartial jury in felony cases is guaranteed by the constitution. Constitution of Texas, Art. 1, sec. 10. An impartial

jury consists of twelve impartial jurors. Constitution, Art. 5, sec. 13; Adams v. State, 243 S. W. 474, and authorities therein cited. When a biased or prejudiced juror is secured without fault or lack of diligence on the part of the accused or his counsel, they acting in good faith upon his responses to questions upon his voir dire, having no knowledge of their inaccuracy, there exists good ground for a new trial. Long v. State, 10 Tex. App. 198; Sewell v. State, 15 Tex. App. 62; Adams v. State, supra.

The juror in question was well acquainted with the mother and father of prosecutrix. He believed that they were good people. He had heard the father before the trial say that appellant and his daughter had married. The duty rested upon him, as upon the other jurors, to determine the credibility of the witnesses and the weight to be given their testimony. Entertaining the belief that the witnesses with whom he was acquainted were good people, he advised the jury at the time they were seeking to reach a verdict, that such was the fact. In so doing he sought to bring to their attention a matter not before them in evidence. It is true that the juror declared that he had no opinion as to the guilt or innocence of appellant until the evidence had been concluded, and that further he stated, in effect, that he was a fair and impartial juror. He may have been entirely honest in his belief, and it is no reflection upon him to say that the testimony developed upon the motion for a new trial characterizes him as not having been impartial. The jury acts as a unit and the disqualification or prejudice of one of its members is sufficient, upon motion for a new trial, to vitiate the verdict. Adams v. State, supra; Bolt v. State, 16 S. W. (2d) 235, and authorities therein cited. We think the record reflects that appellant and his counsel were without fault or lack of diligence, and that they were misled by the response of the juror to the effect that he entertained no opinion as to the guilt or innocence of appellant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.