JAMES WILSON V. THE STATE.

No. 17171. Delivered January 23, 1935.
Rehearing Denied March 6, 1935.

176

The opinion states the case.

*Howth, Adams & Hart,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder with malice aforethought, and his punishment was assessed at confinement in the State penitentiary for a term of ten years.

The record shows that on the night of the 18th day of August, 1933, Miss Beatrice Jordan went to a dance at the town of Batson in an automobile belonging to John Bishop. She parked the car at the southeast corner of Dr. Glass' office near the dance hall. After she had been at the dance for approximately one hour she decided to go home. She went to her car, opened the door opposite the driver's seat, and entered it. As soon as she had entered the car a blonde headed lady followed her into the car from the same side. Miss Jordan asked her to vacate, which she refused to do, and when Miss Jordan undertook to turn the switch the blonde lady grabbed for it, whereupon Miss Jordan withdrew the key, disconnected the switch, and handed the key to someone on the outside of the car. The blonde then began to curse and strike Miss Jordan,

whereupon Miss Jordan went to the dance hall, summonded her brother, Morris Jordan, the deceased, and Mr. Doucette, a deputy sheriff, for the purpose of inducing the blonde lady to vacate or if necessary to eject her from the car. The commotion or disturbance at the car caused quite a number of people to congregate at the scene of the disturbance, among whom was the appellant, who remarked while at the car, "I am for the blonde; she is the prettiest." Soon after he had spoken the deceased struck appellant in the face, knocking him up against the people who were standing to the rear of him, and when appellant straightened up the deceased struck him again, whereupon appellant drew his knife and as deceased struck at him the third time the appellant stooped to avoid the blow and then the two clinched and during that time the appellant cut the deceased twice on the left side between the fifth and sixth rib with a pocket knife, the blade of which was $2\frac{7}{8}$ inches long. The deceased in a very short time thereafter died from the effects of said wounds. The testimony further shows that the deceased was over six feet four inches tall and weighed approximately 185 to 190 pounds, while the appellant was about five feet seven inches in height and weighed about 140 or 145 pounds. The appellant testified in his own behalf that he did not intend to kill deceased when he struck him; that he merely cut him to get loose from the deceased and prevent him from inflicting serious bodily injuries upon him; that when he was informed that he had seriously wounded the deceased he said, "I am sorry. I didn't go to hurt him like I did."

By bill of exception No. 1 appellant complains of the action of the trial court in permitting the district attorney to prove in detail the acts and conduct of the blonde lady towards Miss Jordan out at the car prior to the time that the appellant appeared at the scene of the difficulty of which he had no knowledge. Whatever may have passed between the ladies at the car in the absence of the appellant could not be chargeable to or binding on him, but the fact that the blonde lady entered the car of Miss Jordan and declined to vacate, whereupon Miss Jordan summoned her brother, the deceased, and a deputy sheriff was admissible to show why the deceased was present at the car and to show what induced others, including the appellant, to go to the car. The State had a right to show what caused the people to congregate at and about the car in order to give the jury a full understanding of what brought the appellant and deceased together at the car, but we do not believe that the action of the court in permitting a detailed statement

of what passed between the two ladies at the car was admissible; howwever, we do not believe it was such error as would require a reversal of this case.

By bill of exception No. 2 the appellant complains of the action of the trial court in overruling his objection to the court's main charge in which he pointed out that the court had failed to instruct the jury that before they could convict the defendant of murder they must find and believe from the evidence beyond a reasonable doubt that the defendant entertained specific intent to kill deceased at the time he cut him, if he did cut him. When the court's charge is considered as a whole we do not believe that we would be justified under art. 666, C. C. P., to predicate a reversal on the action of the trial court in declining to respond to the appellant's objection, yet we believe that upon another trial the court should respond to the objection in order to fully accord appellant every legal right to which he is entitled under the facts.

By bill of exception No. 3 and by motion for new trial the appellant complains of the action of the court in overruling his motion for a new trial based on the ground of misconduct of the juror Ben Holland, in this, that before the trial of the case the juror Holland had expressed an opinion as to the guilt of the appellant and that if he were selected as a juror he would send the appellant to the penitentiary for at least 10 years. It was alleged in the motion for new trial that said juror had expressed himself as above stated to J. E. Langston and Clyde Weatherford and that he had also discussed the case with Miss Beatrice Prince, a school teacher, while he was engaged in carrying the school children and their school teacher to and from the schoolhouse. To said motion the appellant attached the affidavit of J. E. Langston, Clyde Weatherford, and Olvie Bice. The State contested the motion for new trial and upon the contest the court heard testimony. Clyde Weatherford testified as follows: "I had a conversation with Ben Holland. I asked Mr. Holland if he thought the Wilson case would come up at this term of court and he said he didn't know. He made the statement that if he was on the jury in that case or any other case where a man was cut to death he would have to send him to the penitentiary. Regardless of what the circumstances are he would convict him."

J. E. Langston testified that he was not acquainted with the defendant, James Wilson; that he heard the juror Ben Holland discuss the case of James Wilson charged with the murder of Morris Jordan. He further testified as follows: "We were

in the school bus that Holland drives between Olive and Kountze. Holland said that he thought that Wilson ought to have at least 10 years. He said, 'In my opinion I think he at least ought to have 10 years'."

The juror Ben Holland testified at the hearing and denied ever having made any such statements as were attributed to him by Weatherford and Langston. He admitted, however, that he knew of no reason why these two men should come into court and tell a story on him. He also denied having discussed the case with Miss Beatrice Prince in the presence of Olvie Bice. He admitted, however, that Mr. Coe, the county attorney, had advised him of the filing of the motion in which it was charged that he had discussed the case with Miss Prince; upon being informed by Mr. Coe of these facts he immediately went to the home of Miss Prince to ascertain if she had made an affidavit in which she stated that he had discussed the case with her and had expressed an opinion. He said, "I talked to her about that subject, that is the subject I went there to talk to her about. She told me a lawyer came up to Park Collins and talked to her about it, and she says, 'I don't know anything about it'." That he then said to her, "I wouldn't make any statement to that effect. In fact if I ever talked to you it slipped my memory." He further testified: "I don't know as I can tell you right now who told me that she had made this statement except it might have been Mr. Coe. I believe it was. He told me that he heard Miss Prince had made a statement to Mr. Daughtry, counsel for the defense, in which she said that I said James Wilson should be convicted of murdering Morris Jordan and if I sat on this jury I would send him to the penitentiary for 10 years. I believe Mr. Coe told me that. I went out there to see her on that purpose." Olvie Bice testified as follows: "I am 14 years old. I went to school at Kountze. I get from where I live to school on the transfer, the school bus. Ben Holland drives that school bus. Miss Prince, she lives out in that neighborhood and she rides on the bus and comes to school with me. I overheard a conversation on that school bus between Ben Holland and Beatrice Prince, the lady who taught school, relative to a boy named James Wilson who was accused of the murder of the Jordan Boy. I heard them talking about it more than one time. I don't remember now anything that Mr. Holland said. I heard them discussing the case more than once. I don't know James Wilson."

The motion for new trial, which is duly verified by the ap-

pellant and his attorneys, shows that the juror on his voir dire was fully interrogated as to whether he had an opinion or had ever expressed an opinion as to the guilt or innocence of the appellant. He denied that he had ever expressed an opinion or that he had a fixed opinion, whereupon he was accepted as a juror. The court, after hearing the testimony, overruled the motion, to which appellant excepted. This matter presents a rather perplexing question. Ordinarily the judgment of the trial court on an issue of fact will not be disturbed by this court unless it appears that the judgment of the court is against the great preponderance of the testimony. The testimony offered by the appellant shows that the juror had expressed an opinion to Langston and Weatherford as to the appellant's guilt and what he would do if he was selected as a juror in the case. This he denied, but he admitted that he knew of no reason why these parties should come into court and tell a story on him. The record does not show that these parties were particular friends of the appellant or were unfriendly to the juror Holland or to the deceased. The juror also denied having discussed the case with Miss Prince, but admitted that upon being informed that the appellant's attorney's had obtained an affidavit from Miss Prince in which she stated that he had discussed the case with her and had expressed an opinion, he immediately went from the courthouse to see Miss Prince and ask her if she had not made an affidavit to that effect not to do so. Although his veracity was severely attacked, he did not bring Miss Prince into court or have her brought into court to give testimony at the hearing. Considering his testimony together with his conduct immediately after being informed that appellant's attorneys had an affidavit from Miss Prince, in connection with the entire testimony given upon the hearing, leads us to the conclusion that the appellant has not had a trial by a fair and impartial jury of 12 men as contemplated by section 10, of article 1 of the Bill of Rights.

Having reached the conclusion that the trial court erred in overruling appellant's motion for new trial, the judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State has filed a motion for rehearing calling attention to the rule governing where the claim is made on motion for new trial that a prejudiced juror sat in the case, referring to Sec. 565, p. 288, Branch's Ann. Tex. P. C., and citing a number of authorities applying said rule. The principle stated was recognized in our original opinion. The application of the principle to the facts developed upon the hearing of the motion is the troublesome question here. We have again carefully reviewed such facts. Neither of the two young men who testified upon the hearing were shown to be particular friends of appellant, or particularly interested in what became of his case. They noticed a juror had been accepted, whom according to their evidence, they had heard make statements about the case which did not comport with one who was an impartial juror. They did not report the matter to the attorneys for appellant, nor seemed to have made it known for the purpose of securing a new trial for him, but what they said about it reached appellant's attorneys, and the matter then became a subject of inquiry. The little school girl who testified that on more than one occasion on the school bus she heard the juror talking to the young lady school teacher about appellant's case lends color to the evidence of the young men. Although the little girl did not understand what was said between the juror and the teacher, yet she was positive appellant's case was the subject of the conversation. The teacher made no affidavit regarding the matter, but when the juror understood that she had done so he immediately went to see her about it. His version of the conversation with her at the time has been construed differently by attorneys for the State and appellant. She was not present at the hearing on the motion. The juror had been placed in such position that the State could ill afford to be without her testimony regarding the conversation asserted to have occurred between her and the juror on the bus. From the whole record we are still in such doubt about the matter that we have not been able to conclude that our original opinion was erroneous.

The motion for rehearing is overruled.

*Overruled.*