Heriberto DELRIO, Appellant,

v.

The STATE of Texas, Appellee.

No. 1406–91.

Court of Criminal Appeals of Texas, En Banc.

Nov. 4, 1992.

James M. Leitner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Andrea F. Lopes, Greg Serres, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

Appellant was convicted of the aggravated offense of possession of cocaine with

intent to deliver. V.T.C.A. Health and Safety Code, § 481.112(d)(3). The jury assessed his punishment, enhanced with a prior drug conviction, at life in prison and a $500,000 fine. V.T.C.A. Health and Safety Code, § 481.107(d). The Fourteenth Court of Appeals reversed appellant's conviction, holding that trial counsel was ineffective in failing to interpose a challenge for cause against a venireman who plainly and unambiguously declared he could not be a fair and impartial juror, and who eventually sat on appellant's jury. *Delrio v. State*, 820 S.W.2d 29 (Tex.App.—Houston [14th] 1991). The court of appeals opined:

> "We can conceive of no reasonable defense strategy that would justify allowing such an individual to sit on a jury to determine the legal fate of one's client in a criminal trial. Permitting such an occurrence undermines in advance the perceived essence of a jury's purpose to render a fair and impartial verdict. Indeed, if the presumptive purpose of all "official" participants in the process is to secure a fair trial, it would have been prudent, although not legally mandated, for the trial judge, or even the prosecutor, to have sought removal of this individual from participation in this case."

*Id.*, at 32. In its petition for discretionary review the State contends the court of appeals has encumbered trial counsel's ability to make reasoned strategic choices in the selection of a jury, and that its holding is therefore inconsistent with *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We granted the State's petition to examine the opinion of the court of appeals in light of this contention. Tex.R.App.Pro., Rule 200(c)(3).

## I.

After counsel for appellant and the State concluded their general voir dire of the jury panel, venireman Johnny Martinez was called up to the bench for a conference. Martinez had checked "yes" on his juror information form, as to whether he had been "an accused, complainant or witness in a *criminal case*," and at every opportunity during the preliminary and voir dire proceedings he attempted to reveal his personal circumstances.[1] Thereafter, the following colloquy occurred at the bench:

> "THE COURT: Mr. Martinez, you indicated earlier that you knew the defendant and you might have a problem.
>
> [Martinez]: Yes, sir, I wanted to make the statement to the Court that I'm an ex-narcotics officer for the City of Houston and that I didn't want to say that in front of the jury to throw a monkey wrench in the voir dire.
>
> THE COURT: You feel like you know this defendant by virtue of that employment?
>
> [Martinez]: Yes, sir.
>
> THE COURT: Therefore, you feel you probably would not be able to be a fair and impartial juror?
>
> [Martinez]: Exactly.
>
> THE COURT: Do you have a challenge?
>
> [Defense Counsel]: All that we are asking you at this point is whether or not under the proper set of circumstances you can be a fair and impartial juror and

1. After the trial judge welcomed the panel, introduced the parties and asked if any venireperson knew any party, one person responded, "The defendant." The judge said, "I will let that be a matter for the lawyers for each side to question when they talk to you." V.S.F. 13.

During general voir dire that followed, when the prosecutor reached Martinez he asked, "How do you know the defendant?" Martinez answered in substance: appellant "frequents" his "place of business," which he identified as a "car wash and laundromat." *Id.* at 40. Later while the prosecutor was inquiring of each venireperson row by row whether anyone believed it "unfair for police officers to work undercover and make cases, as maybe they should be required to wear their uniforms and identify themselves as police officers," when he came to Martinez, the latter asked, "May we approach the bench?" The prosecutor suggested they "do it at the end." *Id.*, at 52.

In his turn, while in the course of questioning individual venirepersons about particular matters, counsel for appellant asked by name, "Mr. Martinez, is there anything where you could not be a fair and impartial juror in this case?" Martinez answered, *"Yes, I think there is."* *Id.*, at 87.

All emphasis is supplied above and throughout by the writer of this opinion unless otherwise indicated.

put aside your feelings, whatever they are, based on prior experiences and listen strictly to the facts of the case and render a verdict according to the law.

[Martinez]: I couldn't be impartial, I'm saying.

THE COURT: There is no challenge? Have a seat."

Neither appellant nor the State exercised a peremptory challenge against Martinez, and he served on appellant's jury.

## II.

■ Counsel for appellant may not have noticed that Martinez had some active role in an earlier criminal case. But after Martinez was the only venireperson to tell the judge at the outset that he knew "the defendant," it is inconceivable that then, or when Martinez later revealed frequent contacts at the "car wash and laundromat" and an inability to be "fair and impartial," counsel failed to consult his client in advance of the predictable bench conference about all related facts and circumstances of their relationship—certainly in determining peremptory strikes. It is clear enough, at any rate, that counsel for appellant made a conscious and informed decision not to remove Martinez. The trial court all but offered to grant a challenge for cause against Martinez, the basis for which was readily apparent to counsel, as illustrated by his attempt to rehabilitate him. While counsel's failure to remove Martinez seems less than a fullfledged trial "strategy," it appears at least to have been the product of a deliberate choice. Any ineffectiveness on his part does not appear, therefore, to have stemmed from ignorance or neglect.

The court of appeals could "conceive of no reasonable trial strategy that would justify allowing [Martinez] to sit" on appel-

lant's jury. 820 S.W.2d at 32. It would even have been "prudent," the court of appeals opined, for the trial court or prosecutor to have sought to strike Martinez, in the interest of a fair and impartial trial. *Id.* The State responds that not only would it not have been "prudent," it would in fact have been error for the trial court to have *sua sponte* struck Martinez, there having been no basis for holding him absolutely disqualified. The State cites *Neel v. State,* 658 S.W.2d 856 (Tex.App.—Dallas 1983, pet. ref'd).

In *Neel* the trial court excused a venireman on its own motion who stated he could not be a fair and impartial juror. The court of appeals held that because this was not a basis for absolute disqualification under Articles 35.19 & 35.16, V.A.C.C.P., *sua sponte* excusal was error. See authorities cited at 658 S.W.2d 857. One justice dissented, arguing that, statutory provisions notwithstanding, the trial court had a duty to exclude the venireman under Article I, § 10 of the Texas Constitution, which provides that "[i]n all criminal prosecutions the accused *shall* have a speedy public trial *by an impartial jury.*" The majority in *Neel* did not address this argument.

We have long held under Article I, § 10, supra, that a single partial juror will vitiate a conviction. E.g., *Reynolds v. State,* 163 Tex.Cr.R. 496, 294 S.W.2d 108 (1956). Since 1931 we have not held, however, despite mandatory language in the provision, that an impartial jury is an inflexible constitutional imperative which cannot be procedurally defaulted or consciously waived.[2] Rather, we have recognized it to be a right of the accused, which must be pressed in some fashion at trial before reversal of his conviction may be predicated upon its breach.[3] Were this not the case, the court

---

2. Article I, § 10, supra, provides that "the accused shall have a ... trial by an impartial jury." While expressed in mandatory terms as an indispensable feature of the system, the Court held this provision conferred a *right* to the accused which could not be impaired without his consent, as authorized by the Legislature. *McMillan v. State,* 122 Tex.Cr.R. 583, 57 S.W.2d 125 (1933).

3. This Court has reversed convictions on authority of the Article I, § 10 guarantee of an impartial jury in essentially three contexts. We have reversed when the accused challenged a venireman for cause on the basis that he could not be a fair and impartial juror, the challenge was denied, and either the venireman sat on the jury because the accused had no remaining peremptory challenges to prevent it, or the accused was forced to use a peremptory challenge against the venireman, exhausted his remaining per-

of appeals could simply have reversed the conviction in this cause because a juror served who was not fair and impartial, irrespective of whether counsel took positive steps to prevent it.

Thus, we have no reason to believe that the right to an impartial jury is not subject to ordinary adversarial principles, to be invoked, or not, according to the vicissitudes of trial.[4] Although we would certainly expect the occasion to be rare, we cannot say, as the court of appeals did, that under no circumstances could defense counsel justifiably fail to exercise a challenge for cause or peremptory strike against a venireman who deemed himself incapable of serving on the jury in a fair and impartial manner.

■ Counsel here may have believed Martinez' impartiality actually favored his client. While this seems unlikely on the cold record, there is no express evocation of the direction of Martinez' bias. We are not privy to any information appellant may have shared with counsel as to his relationship with Martinez, and thus we cannot exclude the possibility that out of his own naivete appellant himself may have given counsel some reason to believe Martinez' partiality might favor appellant.[5] A partiality that favors the accused does not implicate Article I, § 10. *Mabou v. State,* 429 S.W.2d 891 (Tex.Cr.App.1968).

Even if counsel believed Martinez might be partial to the State, we can envision circumstances under which it might appear advantageous to place him on the jury. Indeed, Martinez is the only person with a Hispanic surname to serve on the jury. A *testifying* informant directly negotiated and arranged the transaction in question mainly with appellant's brother; all active participants in the actual delivery, including the informant (but excluding a DPS agent "controlling" the "wired" informant who monitored them aurally and visually from a distance) are Hispanic. Appellant had elected to have the jury assess punishment. He faced a sentence, enhanced by previous controlled substance offenses, of twenty years to life imprisonment and a fine of $500,000. Counsel may have believed that an ex-narcotics officer, although likely disposed to render a guilty verdict, would be more perceptive about relative culpability of parties involved in such a transaction, or might be less inclined to impose sentence on the sterner end of the spectrum because more inured to the nature of the offense. If the State's case appears from the vantage of voir dire to be a strong one, such a strategy, while un-

emptory challenges before a full jury was selected, and was forced to accept another juror who was objectionable to him. E.g., *Counts v. State,* 78 Tex.Cr.R. 410, 181 S.W. 723 (1916); *Burge v. State,* 117 Tex.Cr.R. 141, 35 S.W.2d 735 (1931); *Stockton v. State,* 148 Tex.Cr.R. 360, 187 S.W.2d 86 (1945); *Reynolds v. State,* 163 Tex.Cr.R. 496, 294 S.W.2d 108 (1956). We have also reversed where either proper voir dire questions calculated to root out veniremen who could not be fair and impartial were denied, in derogation of the accused's right to the intelligent use of peremptory challenges, or where such questions were asked but, as demonstrated on motion for new trial, through deceit or inadvertence, a biased venireman did not respond, and that venireman ultimately sat on the jury. E.g., *Duncan v. State,* 79 Tex.Cr.R. 206, 184 S.W. 195 (1916); *Adams v. State,* 92 Tex.Cr.R. 264, 243 S.W. 474 (1921) (Opinion on original submission); *Bolt v. State,* 112 Tex.Cr.R. 267, 16 S.W.2d 235 (1929); *Hillyard v. State,* 116 Tex.Cr.R. 567, 34 S.W.2d 601 (1931); *Norwood v. State,* 123 Tex.Cr.R. 134, 58 S.W.2d 100 (1933); *Wilson v. State,* 128 Tex.Cr.R. 175, 79 S.W.2d 852 (1935); *King v. State,* 129 Tex.Cr.R. 371, 87 S.W.2d 726 (1935); *Anderson v. State,* 135 Tex.Cr.R. 104, 117 S.W.2d 465 (1938); *Shaver v. State,* 162 Tex.Cr.R. 15, 280 S.W.2d 740 (1955); *De La Rosa v. State,* 414 S.W.2d 668 (Tex.Cr.App.1967); *Salazar v. State,* 562 S.W.2d 480 (Tex.Cr.App.1978). Finally, we have held it reversible error to fail to grant a motion for change of venue where pervasive prejudice or mob domination has promised to deny the accused a fair and impartial jury in the county where the offense occurred. *Massey v. State,* 31 Tex.Cr.R. 371, 20 S.W. 758 (1892); *Randle v. State,* 34 Tex.Cr.R. 43, 28 S.W. 953 (1894); *Cortez v. State,* 44 Tex.Cr.R. 169, 69 S.W. 536 (1902); *Sorrell v. State,* 74 Tex.Cr.R. 505, 169 S.W. 299 (1914); *Liggon v. State,* 82 Tex.Cr.R. 514, 200 S.W. 530 (1918); *Williams v. State,* 145 Tex.Cr.R. 536, 170 S.W.2d 482 (1943).

4. The Legislature has expressly provided that challenge for cause on the basis that a venireman "has a bias or prejudice in favor of or against the defendant" "may be waived[.]" Article 35.16(a)(9) & (11).

5. It was, after all, counsel for appellant who seems to have attempted to rehabilitate Martinez.

doubtedly risky, would not be wholly unjustified. That appellant was ultimately assessed the maximum punishment means only that the risk did not pay off; it does not mean the strategy was unacceptable from the perspective of jury selection.

Of course we do not and cannot know whether counsel for appellant in fact utilized this or any other particular strategy.[6] Nor can we say with any confidence, however, that counsel was not functioning within "prevailing professional norms, [so as] to make the adversarial testing process work" in the best way possible for his client. *Strickland v. Washington,* supra, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Waiver of his client's right to insist that every juror in the case be in all things fair and impartial may in counsel's best professional judgment have been an acceptable gamble. Consistently with *Strickland,* we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he "made all significant decisions in the exercise of reasonable professional judgment." *Id.*

We find insufficient basis in the present record to overcome that presumption.[7] Accordingly, we hold that the court of appeals erred to reverse the conviction on the basis of ineffective assistance of counsel for failure to exercise a challenge for cause against venireman Martinez. We therefore reverse the judgment of the court of appeals and remand the cause to that court for disposition of appellant's remaining points of error.

**6.** The State suggests that examination of the jury cards reveals another plausible strategy by appellant's counsel, *viz:* to place as many Catholics and Hispanics as possible on the jury.

**7.** In his dissenting opinion Judge Baird opines that we have merely displaced the court of appeals in this cause, contrary to our recent pronouncement in *Arcila v. State,* 834 S.W.2d 357 (Tex.Cr.App.1992). We disagree. In our view the court of appeals here failed to apply the full extent of the controlling legal precedent. Specifically, in applying the first prong of the *Strickland* standard, the court of appeals neglected to "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466

BAIRD, Judge, dissenting.

"I respectfully dissent because the aggressive and assertive majority turns the jury system upside down." *Jones v. State,* 815 S.W.2d 667, 681 (Tex.Cr.App.1991) (White, J., dissenting). In the majority opinion, the constitutional guarantees of a fair and impartial jury under the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Texas Constitution have taken a back seat to judicial speculation and result-oriented jurisprudence. In a few short pages the majority has torn down a foundation that required many years to build.

> An impartial jury and a fair trial is what the state demands, and in her demands she is no respecter of persons. She has one law for all,—the high and the low, the rich and the poor, the friendless, the most debased and hardened of criminals. The greater and more horrible the crime charged the greater and more imperative the necessity that these safeguards—these landmarks of the law—should be constantly looked to and kept steadily in view, lest, perchance, they should be forgotten, denied, or ignored in those natural promptings of a manly, it may be, and certainly a human, instinct, which, standing appalled and outraged at the very contemplation of such heinous iniquity, condemned the suspected criminal in advance, and mainly, perhaps, through the magnitude and turpitude of his imputed crime.

U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. It is appellant's burden to overcome this presumption. Because the right to a fair and impartial jury is such an important one, it is indeed difficult to imagine a reason to relinquish it in the ordinary case. The court of appeals effectively held, however, that waiver of that right can never constitute a valid trial decision, under any circumstances. Such a holding reverses the presumption of *Strickland* and places the burden on the State to establish a valid strategic decision, rather than upon appellant to show the lack of one. We do not hold today that appellant received effective assistance of counsel in this cause. We hold instead, consistent with *Strickland,* that he has not yet shown he did not.

*Steagald v. State,* 22 Tex.App. 464, 3 S.W. 771, 781 (1886).

The Sixth Amendment and Art. I, § 10 demand no less today. The constitutional guarantee of an impartial jury is the cornerstone of our system of justice. The possibility that even one juror in appellant's case was biased or prejudiced offends our sense of justice and we have so held.

> ... The reflection should be a perfect one, not a distorted one or imperfect one. One crack in the mirror, one ripple upon the surface of the pool, is sufficient to destroy the trueness of the reflection. One improper juror destroys the integrity of the verdict.

*Sorrell v. State,* 74 Tex.Crim. 505, 169 S.W. 299, 303 (Tex.Cr.App.1914).

In its rush to re-evaluate and reverse the judgement of the court of appeals, the majority tramples the Sixth Amendment as well as Art. I, § 10 of the Texas Constitution. There is no doubt that veniremember Martinez could not be a fair and impartial juror. As the Court of Appeals correctly noted:

> ... We can conceive of no reasonable defense strategy that would justify allowing such an individual to sit on a jury to determine the legal fate of one's client in a criminal trial. Permitting such an occurrence undermines in advance the perceived essence of a jury's purpose to render a fair and impartial verdict. .

*Delrio v. State,* 820 S.W.2d 29, 32 (Tex. App.—Houston [14th Dist.] 1991).

Allowing Martinez to sit in judgment of appellant reflects poorly not only on defense counsel but the trial judge as well.[1] By holding that a defendant my waive a fair and impartial jury, we violate the very oath we took to preserve, protect, and defend the Constitution and laws of the United States and of this State. Tex.Const. art. 16, § 1(a).[2]

In its haste, the majority further ignores our judicial policy concerning the re-evaluation of underlying facts after a review of the facts by the court of appeals, a policy we adopted just last term in *Arcila v. State,* 834 S.W.2d 357, 360–61 (Tex.Cr.App. 1992). In *Arcila* we held:

> ... Like this Court, the courts of appeals are duty-bound to uphold the constitution and laws of this State and of the United States. So long as it appears that they have discharged that duty conscientiously by impartial application of pertinent legal doctrine and fair consideration of the evidence, it is our duty in turn to respect their judgments. Our principal role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications. When different versions of the law, including unsettled applications of the law to significantly novel fact situations, compete for control of an issue, it is finally the job of this Court to identify and elaborate which is to control thereafter. But, ex-

---

**1.** Last term we considered whether or not the trial judge has the authority to excuse a juror sua sponte. *Butler v. State,* 830 S.W.2d 125 (Tex.Cr.App.1992). We held:

> When conducting *voir dire,* the trial judge has the discretion, upon a reason sufficient to satisfy the court, to excuse an *otherwise qualified* venireperson from jury service.

> \* \* \* \* \* \*

We continued:

> In order to provide the most efficient jury empanelment system possible, the judge *must* retain the ability to render an excuse in order to rectify problems created by such changed circumstances as, e.g., a venireperson's sudden realization that an excuse applies to her or to new and unforeseen developments which would render venirepersons incapable of fairly considering the facts before them.

> To hold otherwise would unnecessarily hamstring trial judges in the exercise of their duties, and would hinder the selection of a fair and impartial jury.

*Id.,* at 130–131 (emphasis in original). Had the trial judge herein "exercise[d]" his duties, this issue may never have arisen.

**2.** Tex.Const. art. 16, § 1(a) provides:

> Members of the Legislature, and all other elected officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:

> "I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."

cept under compelling circumstances, ultimate responsibility for the resolution of factual disputes lies elsewhere.

\* \* \* \* \* \*

Thus, the only basis for complaint here is that the Dallas Court of Appeals somehow managed to get it wrong. Even if our own decisions might have been different on the question presented, we cannot accept the proposition that an appellate court's judgment ought to be subject to reversal on such basis, at least when the evidence is sufficient to support it. *Arcila*, 834 S.W.2d 357, 360–61 (Tex.Cr. App.1992).

I dissented in *Arcila* because it has long been my feeling that this Court is constitutionally mandated to be more than the "caretaker of Texas law." If we have the duty to uphold the Constitution and laws of this State and nation, that duty encompasses reversing the decision of the courts of appeals when we find either a factual misrepresentation or a misinterpretation of legal precedent. However, I also adhere to the doctrine of *stare decisis*. *See, Ex Parte Porter*, 827 S.W.2d 324, 327 (Tex.Cr. App.1992) (Baird, J., dissenting).

During the more than one hundred years of its tenure this Court, like every conscientious appellate court, has endeavored to follow the ancient doctrine of *'stare decisis et non quieta movere'*—to adhere to precedents, and not to unsettle things which are established—and to reconcile and harmonize divergent applications of legal principle that inevitably are made from time to time. *Sattiewhite v. State*, 600 S.W.2d 277, 280 (Tex.Cr.App.1980) (op. on Reh'g.) (Historical footnote omitted).

*Stare Decisis* demands that we respect our previous decision in *Arcila*. However, the majority completely ignores *Arcila* and reverses the judgment of the Court of Appeals simply because it disagrees with the Court of Appeals. There can be no doubt that the Court of Appeals discharged its duties with an "impartial application of per-

tinent legal doctrine." *Arcila*, at 360. Indeed, the Court of Appeals correctly cited *Strickland v. Washington* as the controlling authority and provided an in-depth discussion of its application in appellant's case. *See, Delrio*, 820 S.W.2d at 32.

The majority opinion spends less than two paragraphs discussing the "pertinent legal doctrine," while devoting pages to a discussion of the underlying facts and rank speculation of counsel's trial strategy.[3] However, the majority fails to provide a compelling reason to depart from our holding in *Arcila*. Today, my worst fears have been realized; the majority clearly plans to use *Arcila* as nothing more than a tool to deny the parties' meaningful appellate review. This is indeed a sad day, not only for the United States and the Texas Constitutions, but also for the Court of Criminal Appeals and its proud heritage.

Because the majority violates the constitutional guarantees to a fair and impartial jury provided under the Sixth Amendment and Art. I, § 10, and further ignores our own precedent, I dissent.

---

**3.** The majority admits as much by declaring, "[o]f course we do not and cannot know whether counsel for appellant in fact utilized this or any other particular strategy." *Delrio*, 840 S.W.2d at 447.