# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00522-CR

**Alvin Simpson, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
## NO. D1-DC-3031167, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Alvin Simpson of indecency with a child by contact. *See* Tex. Pen.

Code Ann. § 21.11 (West 2003). Simpson plead true to an enhancement allegation concerning a

prior felony conviction for passing a forged instrument, and the court assessed punishment at ten

years' imprisonment. In his sole issue on appeal, Simpson contends that he was denied effective

assistance of counsel because his counsel did not strike three biased venire members who were

subsequently empaneled on his jury. We will affirm the judgment.

## BACKGROUND

At trial, T.K. testified that on the night of April 23, 2003, when she was fourteen

years old, Simpson visited her parents' home. She stated that Simpson and her father are cousins

and Simpson, who is nicknamed "Skeeter," was a regular visitor. She recalled that other family

members were also visiting that evening, including her mother's cousin, Robert Cantrell. After

everyone else had gone to sleep, Simpson and Cantrell continued drinking beer in the kitchen. T.K. was sleeping in her bedroom with the door open. T.K. testified that she was awakened by Simpson leaning over her and inserting his finger into her sexual organ. When T.K. sat up and asked Simpson what he was doing, he removed his hand "fast" and ran out through the front door, tripping on a telephone cord in her bedroom as he left. T.K. then ran into her mother's bedroom and told her what "Skeeter" had done to her. Her mother summoned police to the residence. The police took T.K. and her mother to the hospital, where a medical examiner found a half-centimeter area of redness in T.K.'s genitals. During trial, T.K. identified Simpson in the courtroom as the person who sexually assaulted her.

T.K.'s mother testified that, on the evening in question, she was awakened by her daughter, who was "crying frantically" and told her that "Skeeter had his hands in her pants, in her privates." She stated that she "jumped up and ran" down the hallway to the front door which, along with the screen door and the patio gate, was wide open. As she went into the yard, she saw the taillights of Skeeter's borrowed van as it was driving away.

Jackie Switzer, the certified sexual assault nurse examiner who examined T.K., testified that T.K. told her, "I was sleeping and I woke up and he was right there. His hand was down in my shorts. I told him, 'What are you doing?' He didn't answer me. He felt my private part. His finger was in my vagina. I ran to my mom's room." She further testified that T.K.'s injury was consistent with her assertion that Simpson had placed his finger in her sexual organ.

Detective Robert Bowers of the Austin Police Department testified that he and a Department investigator, Bruce Stevenson, videotaped Simpson's voluntary statement on May 13,

2

2003, which was taken before Simpson's September 17, 2004 arrest. Detective Bowers recalled Simpson stating that he "might have" touched T.K.'s sexual organ. Investigator Stevenson then asked Simpson, "Did you?" Simpson replied, "Okay." Then Simpson said he had been "very intoxicated." Detective Bowers also testified that Simpson placed himself in T.K.'s bedroom at the time of the offense.

Simpson did not testify or present any witnesses at trial. But in his videotaped statement to the police, Simpson admitted to being in T.K.'s bedroom and stated that he "might have accidentally touched her [sexual organ]." Simpson claimed he was drunk, entered T.K.'s room looking for a place to sleep, and did not realize that she was in her bed. Simpson was indicted for sexual assault of a child (count one) and indecency with a child by contact (count two). He pleaded not guilty and the case was tried to a jury.

The jury found Simpson not guilty of sexual assault of a child but guilty of indecency with a child by contact, as alleged in count two of the indictment. Simpson appeals his conviction, contending that he was denied his constitutional right to effective assistance of counsel because his trial counsel allowed three biased venire members to serve on the jury.

**DISCUSSION**

**Standard of review**

We evaluate ineffective assistance of counsel claims under the two-part test formulated by the Supreme Court in *Strickland v. Washington*, requiring a showing of both deficient performance and prejudice. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 770 & n.3 (Tex. Crim. App. 1999). To prove ineffective assistance, appellant must show: (1) that trial

3

counsel's representation was deficient, falling below the standard of prevailing professional norms; and (2) a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 687-88, 694; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Absent both showings, we cannot conclude that there has been a breakdown in the adversarial process that renders the result of a trial unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Salinas*, 163 S.W.3d at 740. Appellant bears the burden of overcoming the presumption of reasonable attorney performance and is required to prove by a preponderance of the evidence that his counsel was ineffective. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). We do not speculate about an attorney's strategy. *Id*. We review the effectiveness of counsel in light of the totality of the representation and particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the meritorious nature of the claimed ineffectiveness. *Id.* at 814.

**Counsel's performance in voir dire**

Simpson challenges his attorney's performance during the guilt or innocence phase of the trial, specifically contending that his counsel was ineffective because he allowed venire members 12, 19, and 39 to be selected for Simpson's jury, despite statements reflecting their bias during *voir dire*.

State's counsel asked the venire members if anyone present had been a victim of sexual assault, or if they had a family member or close friend that had been a victim of sexual assault. The following exchange then took place with Juror No. 12:

State's counsel:  Who is the person?

Juror No. 12:  Myself.

State's counsel:  Yourself. And how long ago was that?

Juror No. 12:  2003.

State's counsel:  2003. And did that get reported?

Juror No. 12:  No.

State's counsel:  Okay. Can you put that experience aside, [Juror No. 12]?

Juror No. 12:  Uh-huh.

State's counsel:  You can put that experience aside and be fair and impartial here?

Juror No. 12:  (Nodding).

State's counsel:  Okay. Thank you, [Juror No. 12].

Simpson's trial counsel did not question Juror No. 12 any further, nor did he raise a challenge for cause or use a peremptory strike against her. But Juror No. 12 had previously shown that she could be fair, when she volunteered this comment to the prosecutor:

I was just thinking of sometimes—or just thinking that maybe if a child was examined, what if she was riding her bike? She could have trauma and they could show on the results, but that doesn't mean that she was sexually assaulted.

5

Juror No. 39 also volunteered a response to the State's question about acquaintance with sexual assault victims:

State's counsel:    You are [Juror No. 39]?

Juror No. 39:       Yes.  My niece was date raped when she was in college.

State's counsel:    Okay. How long ago was that?

Juror No. 39:       Probably 10 years ago.

State's counsel:    Ten years.  Can you put that life experience aside?

Juror No. 39:       Probably, yes.

. . . .

Judge:              I just want to make sure I understood your answer, [Juror No. 39]. I believe that you had a friend or family member or something that had been sexual assaulted and I want to make sure I understood your answer.  The question is: Notwithstanding that happening in your family or friendship or something, can you judge this case on its own facts and fairly and honestly arrive at a decision in this case?

Juror No. 39:       I believe so, yes.

. . . .

Defense counsel:    You can tell the Judge with [confidence] that what happened in your life with your niece, I think it was, is not going to influence your vote here so you're not more likely to find Mr. Simpson guilty?

Juror No. 39:       I don't see any reason why it would.

Simpson's trial counsel challenged Juror No. 39 for cause, which was denied. Simpson's trial counsel did not use a peremptory strike on Juror No. 39, and he was eventually empaneled on Simpson's jury.

At a different point during *voir dire*, defense counsel asked the potential jurors whether they would be "uncomfortable listening to testimony or possibly seeing some evidence about sexual penetration of a child." Counsel subsequently clarified that he only wanted a show of hands from the panelists who felt that the uncomfortable nature of the evidence that they were likely to hear would take away their ability to be fair and impartial and render a verdict based solely on the evidence and the testimony. Juror No. 19 raised her hand in response and counsel questioned her further:

Defense counsel: [Juror No. 19] you had your hand up?

Juror No. 19     Yeah. I have three daughter[s]. They [are] all under ten. So [I] have strong feeling[s] about this.

Defense counsel: Okay do you think these strong feelings towards your daughters—

Juror No. 19:    Yeah. Towards kid[s] in general.

Defense counsel: You think that's likely to influence your verdict in this case even though your daughters don't have anything to do with this?

Juror No. 19:    I cannot say that for sure unless you have clear-cut evidence that this person is innocent. And if your evidence is fuzzy I cannot say that unless—

Defense counsel: Well, let me rephrase this question because I think it might get towards your answer. And once again I want to hear your answer. Are you saying that because this is an accusation about something he did to a child, that you would require the defense to put on evidence of his innocence?

7

| | |
|---|---|
| Juror No. 19: | No. I would say I can't be fair, you know in the middle, and not have bias if your evidence is solid. I can't do that. But if there is something I have to think, whatever, so. . . . |
| Defense counsel: | But say, for example, the defense didn't put on any evidence at all. Would you still be able to find him not guilty if you weren't convinced by the State's evidence beyond a reasonable doubt? |
| Juror No. 19: | But also, to me, if you won't do it and you couldn't do it, is the same as you did it. That's how I see [it]. It's not just you have to do it physically as long as you think it. |

Defense counsel did not challenge Juror No. 19. After the judge read the final list of empaneled jurors at the conclusion of *voir dire*, defense counsel stated, "Your Honor, we have a question regarding one [Juror No. 19] that we thought was struck." After that inquiry, counsel held a discussion off the record.

**Ineffective assistance**

Direct appeal is often an inadequate vehicle for raising an ineffective assistance claim because the record is undeveloped. *See Thompson*, 9 S.W.3d at 813-14. To evaluate counsel's performance, which we review with great deference and without the "distorting effects of hindsight," *see Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984), counsel's reasons for acting or failing to act, or counsel's strategic choices, must appear in the record. *See Thompson*, 9 S.W.3d at 814. Without specific explanations for counsel's decisions, the record does not contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (noting that when record contains no explanation for

8

counsel's decisions, appellate court should be cautious in deciding whether "motivation behind counsel's actions" was "of strategic design or the result of negligent conduct").

The court of criminal appeals has determined that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Absent such an opportunity, we are not to find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). The presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance applies to counsel's decisions regarding which venire members to challenge or strike. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (holding that trial counsel's failure to challenge impartial juror did not constitute ineffective assistance because record did not indicate why counsel did not strike that venire member); *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (same).

Here, as in *Jackson* and *Delrio*, the record does not demonstrate the alleged ineffectiveness necessary to overcome the presumption of reasonable professional assistance. Simpson did not file a motion for new trial and the record contains no evidence of the strategy behind counsel's decision to forgo peremptory strikes against Jurors 12 and 39. Counsel's conduct as it relates to allowing these two individuals to serve on the jury falls within the presumptive range of reasonable professional assistance based on this record.

The issue with regard to Juror 19 differs slightly. Defense counsel's comment that "we have a question regarding one that we thought was struck," might suggest that counsel mistakenly forgot to strike this juror. However, the conversation immediately following this comment occurred off the record and is referenced only as a "discussion between attorneys." Moreover, a statement that is capable of being interpreted as deficient performance, alone, is not enough to satisfy the first prong of the *Strickland* test. *Strickland* requires that the claim of deficient performance be "firmly founded in the record" and that the record "affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814. The statement in the record is insufficient to overcome the presumption that counsel provided reasonable professional assistance.

Even if counsel's failure to strike Juror No. 19—or Jurors 12 and 39—constituted deficient performance under the first prong of the *Strickland* test, Simpson has not met the test's second prong by demonstrating prejudice. The second prong of the *Strickland* test requires the defendant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Here, the evidence was overwhelming that Simpson committed the lesser offense of indecency with a child by contact for which he was convicted. In his statement to the police, Simpson admitted that he might have touched the child's sexual organ. T.K. identified Simpson as the person who had been in her room and touched her. T.K.'s mother testified that her daughter woke her, crying frantically and told her that "Skeeter had his hands in her pants, in her privates." She also testified to the manner of Simpson's departure from her home, leaving the front door, screen door and patio gate open. The strength of the evidence at trial makes it unlikely that the result

10

would have been different even if Jurors 12, 19, and 39 had been struck and were not on Simpson's jury.

Because Simpson has not met the burden of showing that there is a reasonable probability that the result of the proceeding would have been different but for the alleged errors of his trial counsel, we conclude that Simpson has not overcome the presumption that his counsel's conduct was beyond the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. We overrule Simpson's sole issue.

## CONCLUSION

Based on this record, Simpson cannot overcome the presumption that his trial counsel's performance was reasonable. Accordingly, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 31, 2006

Do Not Publish

11