**Affirmed and Opinion filed September 30, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00219-CR

**ODELL BURGESS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1376308**

## O P I N I O N

Appellant, Odell Burgess, appeals his conviction for evading arrest with a motor vehicle, contending (1) the evidence is legally insufficient to support the conviction, (2) the trial court improperly commented on appellant's failure to testify, (3) the trial court erred by admitting evidence of an extraneous offense during the guilt-innocence phase, and (4) appellant received ineffective assistance of counsel. We affirm.

# I. BACKGROUND

According to the State's evidence, at approximately 6:30 p.m. on September 7, 2012, Houston police officer Marc Stallworth was seated in his police car at a business on the westbound feeder of the South Loop freeway. He heard a "rush of air" from the freeway, which he associated with a speeding vehicle. He noticed a black pickup truck, which was travelling westbound on the freeway, exit at Stella Link Road. Officer Stallworth estimated the vehicle was travelling over 100 miles per hour. Appellant was later identified as the driver, and there were two male passengers. Officer Stallworth entered his police car and followed the truck.

Appellant then used the Stella Link u-turn to begin travelling eastbound on the feeder. After Officer Stallworth completed the u-turn, he activated his lights and siren. At that point, he was four car lengths behind the truck, with no other vehicles in between. Appellant immediately "floor[ed] it"—from about 45 miles per hour (his speed when making the u-turn) to about 65 miles per hour. The occupants also threw items out of the truck onto the side of the feeder. Appellant's speed then varied between 50 to 65 miles per hour as he wove through traffic, with Officer Stallworth in pursuit, for approximately half a mile. There were several side streets and businesses along the feeder where appellant could have safely stopped, but he failed to do so. He continued toward the next intersection—the feeder and South Main Street—where traffic was backed up at the light.

Appellant turned into the parking lot of a service station located on the corner of that intersection. He wove through vehicles in the lot and attempted to turn right onto South Main. A constable who had observed the activity used his car to cut off the truck and forced it back into the parking lot. Appellant then attempted to exit back onto the feeder but stopped when he was cut off by another

2

police car that had joined the pursuit. The officers ordered the occupants to exit the truck, and appellant was arrested, without further incident.

The State also presented evidence that, within twenty minutes before Officer Stallworth's pursuit, the occupants of the truck committed a robbery, less than five miles from where they were eventually detained. Claudine James was seated in her vehicle in the parking lot of a post office when she saw another woman park her "two-seat" Mercedes and enter the post office. Then, a black pickup truck drove up and blocked the woman's car. A passenger (not appellant) exited the truck, looked around, and entered the woman's car. A "child, a young girl" then "jumped" out of the car, screaming, with eyes as "big" as "plates." The man took a purse and cell phone from the car and re-entered the truck, and the driver left.

James followed the truck as it traveled at an extreme speed on the South Loop but eventually lost sight of it near the Stella Link exit. When James took that exit, she intended to alert Officer Stallworth whom she saw on the feeder, but he then activated his lights and u-turned. James did not observe Officer Stallworth's chase and next saw the truck when it had been stopped at the service station. James informed the officers about the robbery and identified appellant's truck as the one involved and one of his passengers as the man who entered the woman's car at the post office.

In the area where Officer Stallworth had observed the occupants throw items from the truck, officers found a purse and business cards belonging to the robbery victim. The officers' testimony indicated that a $100 bill found in one of the truck passenger's shoes was stolen in the robbery. The officers also found three new $100 bills in appellant's pocket.

A jury found appellant guilty of the third-degree felony offense of evading arrest or detention with a motor vehicle. Appellant pleaded "true" to two

3

enhancement paragraphs. The jury assessed punishment at fifty-three years' confinement.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is insufficient to support his conviction.

## A. Standard of Review and Applicable Law

When reviewing sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). We do not sit as the thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw all reasonable inferences from basic facts to ultimate facts. *Id*. Our duty as reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

As charged in the present case, a person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to . . . detain him." Tex. Penal Code Ann. § 38.04(a) (West Supp. 2014). The offense is a third degree felony "if the actor uses a vehicle while the actor is in flight." *Id.* § 38.04(b)(2)(A) (West Supp. 2014).

4

**B.     Analysis**

Appellant asserts there is no evidence he intentionally fled from a person he knew was a peace officer. Appellant characterizes his actions as needing time to recognize Officer Stallworth as a police officer, move to the right lane of the feeder, and voluntarily stop at the service station. However, the jury could have rationally inferred that appellant immediately recognized Officer Stallworth as a police officer because the officer activated his lights and siren while only a few car lengths behind appellant, with no vehicles in between. The jury was free to reject that appellant was merely attempting to pull over because he accelerated when the officer activated his lights and siren, led the officer on a high-speed chase while weaving through feeder traffic, attempted to flee onto another street through the service station, and stopped only when forced to do so by another police car. Moreover, the jury could have rationally inferred that appellant fled from Officer Stallworth because appellant and his passengers had just committed a robbery and thought the officer intended to detain them for that offense. The fact that the occupants of the truck threw out items stolen in the robbery as soon as the officer activated his lights and siren supported such inference.

Additionally, appellant contends the evidence is insufficient to support a finding that Officer Stallworth was lawfully attempting to detain appellant. Officer Stallworth's testimony demonstrated he was attempting to detain appellant for speeding within the officer's view. *See* Tex. Code Crim. Proc. Art. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). Appellant challenges that the evidence was sufficient to establish he was speeding.

Appellant suggests Officer Stallworth could not have heard a "rush of air" while seated in his car. However, the jury could have concluded that either the

5

door was open or Officer Stallworth heard the "rush of air" even with the door closed. Further, Officer Stallworth then observed appellant traveling at least 100 miles per hour. Appellant argues Officer Stallworth could not have known appellant's speed because the officer "did not have a radar detector, did not pace Appellant's vehicle, and has never been trained on how to do a visual estimation of speed." However, the jury was free to believe Officer Stallworth's testimony that he estimated the speed based on twenty years' experience as a police officer. James's testimony also supported Officer Stallworth's estimation because James had to travel about 104 miles per hour to keep up with appellant on the freeway.

Finally, appellant argues he could not have been traveling 100 miles per hour because Officer Stallworth agreed that traffic was heavy that time of day. However, the officer explained that traffic was not at a "standstill" and indicated there was no traffic as appellant exited the freeway at that speed. The jury could have concluded that appellant found a path in which to travel 100 miles per hour.

In summary, the evidence is sufficient to support the jury's verdict. We overrule appellant's first issue.

### III. ALLEGED COMMENT ON APPELLANT'S FAILURE TO TESTIFY

In his second issue, appellant contends that language in the jury charge constituted an improper comment on appellant's failure to testify.

### A. Standard of Review and Applicable Law

A trial court's comment on a defendant's failure to testify violates his constitutional and statutory privileges against self-incrimination. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08 (West 2005); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). The allegedly offending language must be viewed from the jury's standpoint, and the implication

that the comment referred to the defendant's failure to testify must be clear. *Bustamante*, 48 S.W.3d at 765. It is insufficient that the language might be construed as an implied or indirect allusion. *Id.* "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* In applying this standard, the comment must be analyzed in context. *See id.*

Appellant did not object at trial to the charge. Unobjected-to charge error requires reversal only if it was "fundamental"—error that was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Egregiously harmful errors "are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). Egregious harm is determined on a case-by-case basis and is a difficult standard to prove. *Id. at* 489. In analyzing harm, we must consider (1) the charge itself, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Id.*

**B.      Analysis**

Appellant maintains that the following language in the charge constituted a comment on his failure to testify:

> You are instructed that certain evidence was admitted before you in regard to the defendant's having been charged and convicted of an offense or offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon

7

the weight you will give his testimony, and you will not consider the same for any other purpose.

According to appellant, the reference to "weight you will give his testimony" is a comment that the trial court expected appellant to testify but he failed to do so.

We agree that the paragraph was erroneous because it incorrectly suggested that appellant testified. We note that the instruction also refers to evidence of prior convictions though it is undisputed that no such evidence was offered or admitted. However, we disagree the paragraph amounted to a comment on appellant's failure to testify or caused egregious harm. When considered in context, the paragraph did not imply that the trial court expected appellant to testify, much less raise any implications from the fact he did not testify.

As the State acknowledges, the charge was "over inclusive" by setting forth various alternative instructions that were not all applicable to this case. However, the trial court also gave the jury instructions that were applicable to the case, including instructions regarding appellant's right not to testify. Specifically, during voir dire, the trial court informed the jury:

> If the Defendant does not choose to testify, the jury may not consider that fact as evidence of guilty [sic], nor may the jury or any juror in the deliberations comment or in any way allude to that fact.

Then, in the jury charge, immediately before the paragraph at issue, was the following language:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.
>
> In this case, the defendant has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

8

In light of these applicable instructions, we cannot say that the jury "necessarily and naturally" took the erroneous instruction as a comment on appellant's failure to testify rather than merely an alternative, but inapplicable, instruction for a case in which a defendant does testify. *See Bustamante*, 48 S.W.3d at 765. We conclude the instruction was not "manifestly intended or . . . of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *See id.*; *Roland v. State*, No. 14–11–00584–CR, 2012 WL 2784404, at *7 (Tex. App.—Houston [14th Dist.] July 10, 2012, no pet.) (mem. op., not designated for publication) (holding identical paragraph was not comment on appellant's failure to testify). Further, we presume the jury heeded the trial court's other instructions and did not consider appellant's failure to testify. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (explaining appellate court generally presumes jury followed trial court's instructions in the manner presented).

Although appellant's primary complaint concerns the portion of the paragraph suggesting appellant testified, we also conclude there was no egregious harm resulting from the portion incorrectly stating that evidence of a previous conviction was admitted. When considered in context, the trial court instructed that such conviction could not be considered as evidence of appellant's guilt and could only be considered in deciding what weight to assign his testimony. Again, no such conviction was admitted, and appellant did not testify. Thus, we cannot say that the jury "necessarily and naturally" took the erroneous instruction as a comment on appellant's failure to testify rather than an alternative, but inapplicable, instruction for when such a conviction is admitted and the defendant does testify. Moreover, in another part of the charge, the trial court instructed, "During your deliberations in this case, you must not consider, discuss, nor relate

9

any matters not in evidence before you." We presume the jury followed this instruction and did not speculate appellant might have a previous conviction when there was no evidence of any such conviction. Accordingly, we overrule appellant's second issue.

## IV. EXTRANEOUS-OFFENSE EVIDENCE

In his third issue, appellant contends the trial court erred by admitting during the guilt-innocence phase the evidence that appellant had committed a robbery shortly before Officer Stallworth's pursuit of the truck.

## A.    Alleged Violation of Limine Ruling

Under this issue, appellant first asserts the State violated the ruling on appellant's motion in limine by mentioning the robbery during its opening statement and eliciting testimony regarding that offense without first approaching the bench. Appellant's motion in limine included an item that apparently referenced the robbery. However, the record does not demonstrate the trial court granted that limine request. On the motion, there is the handwritten notation "Granted" next to some of the requested limine items—but not the one at issue. There is no separate order on the motion in limine and no record of any oral rulings. Accordingly, we reject the complaint that the State violated such a ruling and turn to appellant's challenge to admission of the evidence.

## B.    Admission of Evidence

### 1.    Applicable Law and Standard of Review

Texas Rule of Evidence 404(b) provides that "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity,

or absence of mistake or accident . . . ," provided the State gives the requisite notice. Tex. R. Evid. 404(b). When a defendant makes a timely objection that such evidence is inadmissible under Rule 404(b), the State must satisfy the trial court that the evidence has relevance apart from its tendency "to prove character . . . to show action in conformity therewith." *See id.*; *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991).

Even if the State meets that burden, to admit such evidence, the trial court must also determine that the jury could find beyond a reasonable doubt that the defendant committed the extraneous offense. *See Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008); *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994). When reviewing that determination, we are not limited to considering the State's proffer as of the ruling and may consider all of the evidence, including evidence admitted after the ruling. *See Fischer*, 268 S.W.3d at 553–58. We review the trial court's decision to admit the evidence for abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will not disturb the decision if it falls within the bounds of reasonable disagreement. *Id.*

### 2. Analysis

The State contends, and the trial court agreed, that evidence of appellant's participation in the robbery established motive to subsequently evade Officer Stallworth. Appellant does not challenge whether the evidence was admissible for that purpose. Rather, his sole contention is the trial court did not properly determine that the jury could find beyond a reasonable doubt that appellant committed the robbery.[1]

---

[1] In the charge on guilt or innocence, the trial court instructed that the jury could not consider evidence that appellant committed an extraneous offense unless it found beyond a

The challenged evidence was admitted via the testimony of police officers James Crowson and Marcus Ryans, who arrived at the service station after appellant's truck had been stopped, and the testimony of Claudine James. First, the officers collectively testified about the following facts supporting that the occupants of the truck committed a robbery: James's report of the robbery and identification of appellant's truck; the time and location of the robbery relative to Officer Stallworth's pursuit of the truck; and the discovery of the robbery victim's purse and business cards on the side of the road (Officer Stallworth having seen the truck's occupants throw items out) and her $100 bill in one of the passenger's shoes. Then, James provided the details of the incident at the post office described above. Based on all of this testimony, the trial court did not abuse its discretion by determining the jury could find beyond a reasonable doubt that appellant committed robbery, assuming, without deciding, he preserved error on his complaint.[2]

---

reasonable doubt that he committed the offense. Thus, appellant challenges only the trial court's initial determination that a jury could make such finding, as a threshold to admitting the evidence. That instruction also informed the jury it could consider the extraneous offense only "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of [appellant]" relative to the charged offense.

[2] The State acknowledges there was a discussion off the record before the officers' testimony concerning the State's proffer and appellant made some objection. However, our record contains no indication regarding the substance of that discussion and thus whether appellant objected under Rule 404(b). During the officers' testimony, appellant made some intermittent objections on "speculation" and "hearsay" grounds, but not under Rule 404(b). The State then informed the trial court, outside the jury's presence, of its intent to call James. Again there is no record of any previous discussion, but the trial court's comments indicate it was aware of the nature of the evidence. Appellant's counsel made a statement which the trial court apparently understood as a Rule 404(b) objection because the court replied James's testimony was relevant to "the motive of fleeing." However, the record does not reflect this objection was lodged before, or when, evidence about the robbery was first proffered—through the officers' testimony. Nevertheless, we need not decide whether appellant sufficiently and timely invoked the right to a "reasonable doubt" determination, as a threshold to admissibility, because the trial court did not abuse its discretion by making that determination.

12

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann § 29.02(a) (West 2011). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a) (West Supp. 2014). Appropriation of property is unlawful if, inter alia, "it is without the owner's effective consent." *Id.* § 31.03(b)(1) (West Supp. 2014).

According to James's testimony, appellant was not the person who entered the woman's car while she was in the post office and physically appropriated her property. However, a person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). In determining whether an accused is a party to an offense, events before, during, and after the commission of the offense may be considered. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). The jury could reasonably conclude appellant was criminally responsible if his passenger's actions constituted a robbery because appellant (1) used his truck to block the woman's car while the passenger took her property, and (2) drove the getaway vehicle. Accordingly, we will focus on the passenger's actions.

Appellant suggests there was insufficient evidence that the passenger appropriated the owner's property without her consent. However, the following facts supported the theft element of robbery: (1) once the woman went in the post office, the perpetrator looked around, quickly entered her car, took a purse and cell phone, and re-entered appellant's truck, which sped away, (2) the purse and

13

business cards thrown out of the truck when Officer Stallworth began his pursuit belonged to that woman, and (3) the $100 bill found on a passenger was taken from that woman. Appellant emphasizes there was no evidence the three $100 bills found on appellant were taken in a robbery.[3] Nonetheless, the fact that a purse, cellphone, and $100 were taken from the victim would establish the theft element.

Appellant also suggests there was no evidence "anyone suffered bodily injury." Such a finding is not necessary to establish robbery because the offense may also be committed if "with intent to obtain or maintain control of the property," the actor "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *See* Tex. Penal Code Ann § 29.02(a). Appellant advances no argument on appeal regarding this alternative means of committing robbery.

Regardless, James's testimony demonstrated a "child, a young girl" was alone in the front seat of the woman's car when the perpetrator entered. The record is silent on whether the perpetrator made any affirmative threats to the child because the child did not testify and there was no other direct evidence regarding what transpired inside the car.[4] However, the statute encompasses "not just explicit threats, but whatever implicit threats may lead to the victim being placed in fear." *Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011); *see* Tex. Penal Code Ann § 29.02(a). "So long as the [perpetrator's] actions are of such nature as in reason and common experience is likely to induce a person to part with his property against his will, any actual or perceived threat of imminent bodily

---

[3] The trial court sustained appellant's objection to testimony of the officers on whether the $300 was connected to the robbery.

[4] The child testified at the punishment phase, but not at the guilt-innocence phase.

14

injury will satisfy this element of the offense." *Howard*, 333 S.W.3d at 138 (internal quotations omitted). Of the two alternative mental states sufficient to prove an implicit threat, the lesser culpable state of "knowingly" requires that the actor "is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear." *Id.* at 139–40.

The jury could reasonably conclude this requirement was satisfied under the circumstances of this case based on the following rationale inferences: (1) even if the perpetrator did not know a child was in the car as he approached, he knew of her presence as he entered the "two-seat" car; (2) he realized the mere action of an unfamiliar man suddenly entering the front seat of a small car with a child who was alone (while her mother was inside an establishment) would place the child in fear of imminent bodily injury; (3) the child was actually placed in such fear because she jumped out of the car, screaming with eyes large with fright; and (4) the perpetrator capitalized on the child's fear and the fact that it caused her to exit the car to complete the theft—to "obtain or maintain control of the property;" *see* Tex. Penal Code Ann § 29.02(a). *See Williams v. State*, 827 S.W.2d 614, 615–17 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (holding evidence was sufficient to establish robbery where defendant, although he made no verbal threat, had eyes as "red as fire" and seemed to be "under the influence of something" when he placed his face close to shopkeeper's face and demanded money, and shopkeeper's fear was evident from fact he reached for a weapon; the conduct was "intensely and immediately focused on inducing [the shopkeeper] to part with the money").

In summary, because the trial court did not abuse its discretion by admitting evidence of the robbery, we overrule appellant's third issue.

## V. INEFFECTIVE-ASSISTANCE CLAIM

In his fourth through seventh issues, appellant argues he was denied effective assistance of counsel.

## A. Applicable Law and Standard of Review

To prevail on an ineffective-assistance claim, a defendant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *see Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to ineffective-assistance claims under the Texas Constitution). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Thompson*, 9 S.W.3d at 814. In most cases, direct appeal is an inadequate vehicle for raising such a claim because the record is generally undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. When the record is silent regarding trial counsel's strategy, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

**B.      Analysis**

Appellant contends his trial counsel was deficient in four respects:

**1.      Statement during voir dire**

First, appellant complains that counsel informed the jury during voir dire that appellant would face an enhanced punishment.   Before asking the panel members whether they would consider the full range of punishment, counsel stated,

> I want to talk about range of punishment. As you know, [the prosecutor] told you that in this particular case, if there is a conviction, the range of punishment is between 25 and 99 years . . .

As appellant asserts, the prosecutor did not state the range was necessarily 25 to 99 years.   Instead, the prosecutor stated that would be the range in "special" or "certain" circumstances.   Appellant's counsel represented the range was 25 to 99 years, without qualification, although that range would be applicable only if the jury found the two enhancement paragraphs were true.   *See* Tex. Penal Code Ann. § 12.34 (West 2011) (prescribing range of punishment for third degree felony as two to ten years); *Id.* § 12.42(d) (West Supp. 2014) (prescribing range of punishment for third degree felony as 25 to 99 years if defendant has two prior felony convictions).

However, as appellant did not file a motion for new trial, the record contains no evidence of counsel's strategy.   As such, on a silent record, appellant has not overcome the presumption that counsel performed reasonably because there may have been tactical reasons for his actions.   For instance, appellant subsequently pleaded "true" to the two enhancement paragraphs.   Appellant may have already decided to make those pleas, and, thus, counsel decided to inform the panel of the enhanced range to focus on assessing whether potential jurors would consider the

17

lower end. Or, counsel may have been trying to ascertain whether certain panel members might be less likely to convict because they thought the minimum of 25 years was too severe for this offense, as some members subsequently expressed. Consequently, we cannot conclude counsel's statement was "so outrageous that no competent attorney would have" made it. *See Goodspeed*, 187 S.W.3d at 392.

Additionally, we disagree with appellant's suggestion that reference to the enhanced punishment range "prejudiced the jury before the trial could even begin" and contributed to the guilty verdict. The jury was not informed during voir dire that any enhanced range was due to previous felony convictions. Further, we presume the jury followed the trial court's instructions and considered only the admitted evidence when deciding guilt or innocence, which did not include previous convictions. *See Ex parte Bratcher*, No. AP–76,994, 2013 WL 3282972, at *12 (Tex. Crim. App. June 26, 2013) (rejecting claim that defense counsel was ineffective by allowing State to inform panel during voir dire about enhanced range of punishment, although jury did not assess punishment, because jury was not informed of prior convictions and court would presume jury followed trial court's instruction to consider only admitted evidence in assessing guilt).

### 2. Failure to object to all extraneous-offense evidence

Appellant also complains that his counsel failed to object to every instance during the guilt-innocence phase in which the State offered evidence regarding the extraneous robbery. Appellant posits that, if counsel had properly objected, appellant would not have been convicted or his direct challenge to admission of the evidence "would have been better preserved." We need not decide whether counsel failed to properly object because failure to object to admissible evidence is not ineffective assistance and we have concluded the trial court acted within its discretion by admitting the evidence. *See McFarland v. State*, 845 S.W.2d 824,

846 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994); *Webb v. State*, 991 S.W.2d 408, 419 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

### 3.    Failure to object to jury charge

Next, appellant contends his counsel was ineffective by failing to object to the erroneous instruction in the charge discussed above—the paragraph incorrectly suggesting evidence was admitted that appellant had a previous conviction and that he testified.   We conclude that even if counsel's performance were deficient, appellant has not satisfied the prejudice prong of *Strickland*.

Appellant argues he was prejudiced because, if his counsel had objected, the incorrect instruction could have been removed; or, alternatively, if the trial court had refused to remove the instruction, appellant would not have been required to establish egregious harm on appeal.  *See Barrios*, 283 S.W.3d at 350 (stating that if a defendant objects at trial to error in the charge, reversal is required if the error "'is calculated to injure the rights of the defendant," which means that there is "some harm").

We disagree the result of the proceeding would have been different if counsel had objected because (1) the incorrect instruction did not contribute to the guilty verdict, and (2) similarly, appellant would not prevail on appeal even if he were only required to show "some harm."   We recognize that, relative to appellant's second issue directly challenging the instruction, we concluded there was no "egregious harm."   However, we apply the same reasoning to conclude there was no harm: (1) the instruction did not constitute a comment on appellant's failure to testify; (2) we cannot say the jury "necessarily and naturally" took the erroneous instruction as a comment on appellant's failure to testify rather than an alternative, but inapplicable, instruction for when a previous conviction is admitted

19

and the defendant does testify; and (3) we presume the jury followed the trial court's instructions and did not factor appellant's failure to testify into its deliberations or speculate he had previous convictions when no such evidence was admitted in the guilt-innocence phase.

### 4. Failure to strike a prospective juror

Finally, appellant complains that counsel failed to strike a prospective juror—venire person number 25. During voir dire, counsel questioned the panel members regarding their views on the credibility of police officers. The following exchange occurred:

> [COUNSEL]: And you're Juror No. 25, when did you work with a police officer?
>
> VENIREPERSON: I've worked with police officers approximately 25 years as a volunteer running part of juvenile probation and working with battered women and that sort of thing, running some of their programs, being involved with that; and two members in my family are law enforcement.
>
> [COUNSEL]: You feel a police officer will not arrest someone if he did not have good reason to?
>
> VENIREPERSON: Yes.

Counsel did not move to strike this venire person for cause or use a peremptory strike, and she served on the jury.

The reason that appellant regards this venire person as biased is not exactly clear; i.e., whether the person was predisposed to (1) believe Officer Stallworth was lawfully attempting to detain appellant—an element of the offense of evading arrest, (2) believe appellant was guilty of evading arrest based on the fact that he was arrested for that offense, or (3) generally assign more weight to a police officer's testimony. Whether the venire person held one or more of these pre-

conceived notions, appellant has not established counsel performed deficiently by failing to ensure the person did not serve on the jury.

The Texas Court of Criminal Appeals has refused, on a cold record, to hold counsel was ineffective by failing to challenge a venire person who indicated more of a bias than the venire person in the present case and served on the defendant's jury. *See Delrio v. State*, 840 S.W.2d 443, 444–47 (Tex. Crim. App. 1992). During voir dire at the defendant's trial for cocaine possession, the *Delrio* venire person admitted he was a former narcotics officer, knew the defendant by virtue of this employment, and could not be fair and impartial. *See id.* at 444–45. The Court of Criminal Appeals could conceive of some tactical reasons for preferring the venire person serve on the jury: "Although we would certainly expect the occasion to be rare, we cannot say . . . that under no circumstances could defense counsel justifiably fail to exercise a challenge for cause or peremptory strike against a venireman who deemed himself incapable of serving on the jury in a fair and impartial manner." *Id.* at 446–47. Thus, the court held there was insufficient basis to overcome the presumption that counsel was better positioned than an appellate court to judge the pragmatism of the case and made all significant decisions in the exercise of reasonable professional judgment. *See id.* at 447.

Likewise, on our cold record, we cannot foreclose the possibility that appellant's counsel had tactical reasons for failing to challenge the venire person at issue for cause or use a peremptory strike. For example, counsel may have believed the venire person, despite her expressed views, was preferable to others who were subsequent in the panel order or those against whom counsel used peremptory strikes. Without an explanation for counsel's actions, we will not second guess his decision or conclude his conduct was "so outrageous that no competent attorney would have engaged in it." *See id*.; *Thibodeaux v. State*, No.

21

14–07–00647–CR, 2009 WL 1748747, at *14–15 (Tex. App.—Houston [14th Dist.] June 23, 2009, pet. ref'd) (mem. op., not designated for publication) (relying on *Delrio* and recognizing, on cold record, counsel may have had strategy for failing to further question and strike nine panel members who indicated they could not completely afford defendant the presumption of innocence and one panel member who indicated he believed defendant was guilty, such as preferring those panel members to others); *see also State v. Morales*, 253 S.W.3d 686, 696–98 (Tex. Crim. App. 2008) (citing *Delrio* when holding *Morales* counsel was not ineffective for failing to exercise peremptory challenge, after challenge for cause denied, against panel member who was district attorney in office prosecuting defendant although she may have been impliedly biased; there was some evidence counsel made a tactical, albeit difficult, decision because he preferred this panel member serve on jury than those against whom he exercised peremptory strikes).

In summary, having rejected all of appellant's ineffective-assistance contentions, we overrule his fourth through seventh issues.

We affirm the trial court's judgment.

/s/    John Donovan
       Justice

Panel consists of Justices McCally, Busby, and Donovan.
Publish — Tex. R. App. P. 47.2(b).