

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00511-CR

Josef Dalen **RAMOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR3918
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  January 31, 2018

AFFIRMED

On June 22, 2016, after finding Appellant Josef Ramos guilty of two counts of sexual assault, a Bexar County jury assessed punishment at six years' confinement in the Institutional Division of the Texas Department of Criminal Justice, suspended and probated for a period of six years.  On appeal, Ramos contends his trial counsel provided ineffective assistance of counsel and the State offered an improper jury argument.  We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 23, 2014, Ramos and A.F., a female co-worker, and several other friends met at a bar. A.F. drank several glasses of wine and a few shots of alcohol. The group left for a different bar where A.F. was refused service based on her level of intoxication. After sitting and talking outside of the second bar, the group migrated to a fast food restaurant. A.F. drove her vehicle, and Ramos was the passenger in a different vehicle.

In the parking lot, the group again sat around talking. Two of the women left, and then one other man left. Ramos and A.F. were the only two remaining; they were sitting in her car talking when the others left. At some point A.F. and Ramos left the parking lot in A.F.'s vehicle; A.F. contends Ramos was driving and he contends A.F. was driving. They drove to a secluded, dead-end neighborhood street. By all accounts, A.F. was in an inebriated state. A.F. also testified Ramos forced her to ingest cocaine; he grabbed her "by [her] hair and put [her] head down to [ingest the cocaine]."

A.F. testified she "blacked out," and remembered only a few details of the evening. "[She] told him to stop" several times, but she could not move with his body weight on her. She remembered being out of the car and trying to put her clothes back on and being in intense pain. The next thing she remembered was being back in the parking lot of the fast food restaurant and Ramos's friend was picking him up and asking her if she was okay. A.F. called several friends. The police were called and A.F. was taken to the hospital for a sexual assault examination. The nurse collected evidence and saw trauma consistent with sexual assault of A.F.'s sexual organ and anus. The forensic scientist concluded that Ramos could not be excluded as a donor of the DNA evidence collected from the sexual assault kit.

Ramos testified that the encounter was consensual and occurred after A.F. made suggestive remarks and attempted to kiss him in the parking lot of the fast food restaurant.

On April 6, 2015, Ramos was indicted on three counts of sexual assault. The jury found Ramos guilty of two counts of sexual assault and assessed a punishment of six years' confinement in the Institutional Division of the Texas Department of Criminal Justice, suspended and probated for a period of six years.

On appeal, Ramos raises two issues: (1) trial counsel provided ineffective assistance of counsel, and (2) the trial court erred in failing to sustain his objection to improper jury argument during the State's closing argument.

INEFFECTIVE ASSISTANCE OF COUNSEL

## A.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984), the United States Supreme Court set out a two-prong test to determine whether trial counsel's representation was ineffective: (1) "the defendant must show that counsel's performance was deficient" and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694; *accord Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

To establish the first prong, deficient performance, Ramos must prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms." *Id*. (quoting *Strickland*, 466 U.S. at 687–88); *see also Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the proceeding]." *Id*. (citing *Strickland*, 466 U.S. at 687).

To prove harm, Ramos "must demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.'" *Ex parte Moore*, 395 S.W.3d at 158 (footnote omitted) (quoting *Strickland*, 466 U.S. at 694).

Additionally, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *accord Burgess v. State*, 448 S.W.3d 589, 602 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813. Therefore, Ramos "'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

Appellate courts further view matters "from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012); *accord Ex parte Overton*, 444 S.W.3d 632, 640 (Tex. Crim. App. 2014). Our review of trial counsel's actions is "highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007) (citing *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)); *see also Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd) (affirming that in the absence of a developed record, an appellate court should not "speculate as to the reasons why trial counsel acted as he did, rather a reviewing court must presume that the actions were taken as part of a strategic plan for representing the client"). Moreover, an "appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield*, 363 S.W.3d at 593 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

We note the appellate record does not contain a motion for new trial or record allowing trial counsel an opportunity to provide his reasons or strategies during trial. The Court of Criminal Appeals explained that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005).

**B.      Alleged Acts of Ineffective Assistance**

*1.      Failed to Exercise Peremptory Challenges*

In his first issue, Ramos contends he received ineffective assistance of counsel. He argues his trial counsel did not further question, challenge for cause, or exercise peremptory strikes against venire persons with perceived bias. Specifically, Ramos complains that certain venire persons indicated they would interpret a defendant's failure to testify as a sign of guilt, they had been the victim of a sexual assault, they had a close relationship with the victim of a sexual assault, they had family in prison, or they had served on a prior jury for a sexual assault case.

Counsel's questioning during voir dire cannot be held deficient without an inquiry into the reasons for his actions. *See Goodspeed v. State*, 187 S.W.3d 390, 393–94 (Tex. Crim. App. 2005) (holding that on an undeveloped record, counsel's failure to ask any questions in voir dire did not qualify as ineffective assistance, nor did counsel's decision to use two peremptory strikes on jurors "who had already been excused"). On the record before us, counsel actively participated in the entire voir dire process. Although Ramos now contends some of the venire should have been struck for cause based on their responses to how they would interpret Ramos's refusal to testify, the argument is irrelevant in light of the fact that Ramos did testify. Further, counsel asked the panel questions, made statements to elicit biases from them, and set the stage for Ramos's argument during trial.

On appeal, Ramos contends trial counsel did not ask several venire members about their bias regarding sexual assaults. Prior to trial counsel asking questions, the State elicited information regarding the panel's familiarity with, and feelings toward, inter alia, sexual assault. Because the State already elicited the prejudices and biases from among the venire panel, trial counsel was not ineffective for failing to repeat the same questions. *See id*. at 392 (it may be appropriate trial strategy for defense counsel to avoid repeating prosecutor's line of questioning on voir dire). Counsel articulated that the State covered questions and challenges with which he was concerned. On this undeveloped record, we cannot conclude that counsel's actions during voir dire constitute deficient performance. *See id*.

### 2. Failed to Invoke "The Rule"

Ramos next asserts that his trial counsel was ineffective in failing to invoke "the Rule." According to Ramos, trial counsel's failure to do so enabled witnesses to be present for A.F.'s testimony. The Rule cited in Appellant's brief refers to Texas Rule of Evidence 614. *See* TEX. R. EVID. 614. Upon invocation of the Rule by either party, the court must exclude witnesses so they cannot hear the testimony of other witnesses. *Id*. The purpose of this rule is to "prevent the testimony of one witness from influencing the testimony of another." *Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993); *accord Phillips v. State*, 64 S.W.3d 458, 459 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

The record is silent on whether any of the witnesses were actually in the courtroom when A.F. testified. Ramos only argues that trial counsel was deficient by failing to invoke "the Rule." He points to no testimony by any witness that he contends caused him harm as a consequence of any violation of "the Rule." *See Webb v. State*, 766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989) (admission into evidence of testimony of adverse witness in violation of rule of evidence 614 "is not in itself reversible error, but only becomes so where the objected-to testimony is admitted and

the complaining party is harmed thereby). Ramos bore the burden to demonstrate from the record that the proceedings would have been different had trial counsel invoked the Rule. *See id*. He failed to do so. *See id*.; *Thompson*, 9 S.W.3d at 813.

### 3. Failure to Object to Hearsay

During the trial phase, several witnesses testified as to statements A.F. made immediately after the sexual assault. Ramos cites three instances, through three different witnesses, that constituted inadmissible hearsay: (1) A.F. stated that "she was hurting"; (2) A.F. stated she was hurting and told Ramos to stop; and (3) A.F. identified Ramos as the attacker.

Hearsay is a statement that the declarant does not make during the course of a trial or hearing and "is offered in evidence to prove the truth of the matter asserted." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing TEX. R. EVID. 801). For hearsay to be admissible, it must fit into one of the exceptions provided in the statute or the rules of evidence. *See* TEX. R. EVID. 802.

Each of the three statements, about which Ramos complains, were made immediately after the alleged attack. Additionally, each witness described A.F. as "scared," "freaking out," and "yelling and screaming." The rules of evidence provide that testimony regarding an "excited utterance" is an exception to hearsay. TEX. R. EVID. 803(2); *see Zuliani*, 97 S.W.3d at 595. "An excited utterance is a statement relating to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition." *Zuliani*, 97 S.W.3d at 595. The basis for the exception is that the offered statement "represents an event speaking through the person rather than the person speaking about the event." *Id*. For each of the three witnesses about which Ramos complained, the State asked the proper predicate questions under evidentiary Rule 803(2). Moreover, during cross-examination, trial counsel was able use the witnesses to Ramos's advantage. Specifically, trial counsel portrayed one witness as relaying a different version of the

events at trial than provided at the time of the incident, and another witness questioned A.F.'s illegal drug use.

**C.      Analysis**

We note that trial counsel was not provided an opportunity to explain his actions or strategy.  A silent record that provides no explanation for trial counsel's actions usually will not overcome the strong presumption of reasonable assistance.  *See Thompson*, 9 S.W.3d at 813–14. "We are not to second guess counsel's strategy through hindsight, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness." *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979).  The record before this court fails to establish, by a preponderance of the evidence, that defense counsel's challenged conduct was not reasonable under the totality of the circumstances and prevailing professional norms.  We, therefore, conclude Ramos failed to satisfy his burden of proof to affirmatively show that counsel's representation "'fell below an objective standard of reasonableness' under prevailing professional norms." *Ex parte Moore*, 395 S.W.3d at 157.

Additionally, Ramos failed to provide any evidence that, "he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 158 (footnote omitted) (quoting *Strickland*, 466 U.S. at 694).  We, therefore, overrule Ramos's appellate issues related to ineffective assistance of counsel.

We turn to Ramos's issue regarding the State's closing argument.

IMPROPER JURY ARGUMENT

**A.      Standard of review**

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion.  *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).  Such argument does

"not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id*.

**B.     Proper Jury Argument**

"It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (quoting *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)). Thus, "proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement." *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *accord Brown*, 270 S.W.3d at 570; *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990).

**C.     Argument in Question**

| | |
|---|---|
| State: | Look, as we go through this case, I couldn't help but think back on that Stanford rape case. Because I read her letter, the 12 page letter. And the press has called her "Emily Doe" to protect her liability. And this passage in particular stuck out to me. And this is something that Emily Doe, who is the Stanford rape survivor wrote. She said, "So one year later, as predicted—" |
| Defense: | I'm going to object that this is not part of the evidence. |
| Trial Court: | It's overruled. |
| State: | "—a new dialogue emerged. Brock had a strange new story. Almost sounded like a poorly written young adult novel with kissing and dancing and hand-holding and lovingly tumbling onto the ground. And, most importantly, in this news story, there was suddenly consent. One year after the incident he remembered, Oh, yeah, by the way, she actually said yes to everything, so . . ." |

> And I was struck by how similar the defendant's story is. All right. And that thought was further supported by Emmanuel, how his story suddenly shifts two years later. Okay? Because, frankly, the only real difference between this guy and this guy is privilege and the state that they live in. They're both rapists. And they both think, hey, if she's drunk, game on. And we all agree that's not right. The caveman days are behind us. You don't get to take what you want when you want it just because you want it.

**D.     Analysis**

"When reviewing alleged error in a jury argument, the appellate court must analyze the statement in light of the entire argument and not on isolated instances." *DeLarue v. State*, 102 S.W.3d 388, 405 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Ramos contends the State's argument was outside the permissible scope of proper jury argument and denied him the right to a fair trial. The State counters the argument was a plea for law enforcement and a response to defense counsel's argument.

A prosecutor's closing argument may not include presentation of evidence that is outside the record. *Freeman*, 340 S.W.3d at 728. "Improper references to facts that are neither in evidence nor inferable from the evidence are generally designed to arouse the passion and prejudice of the jury and, as such, are inappropriate." *Id.* (citing *Borjan*, 787 S.W.2d at 57). Here, Ramos argues the State relied on a story in the national headlines; the information was neither learned nor inferable from evidence presented in the courtroom. Assuming, without deciding the State's closing argument was improper and the trial court erred in failing to sustain trial counsel's objection, we must determine whether the error affected Ramos's substantial rights. *See id.*

Because improper jury argument is a nonconstitutional error, it must be disregarded if it "does not affect [Ramos's] substantial rights." *See* TEX. R. APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000). A defendant's "substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King*

*v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *see also Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002). In *Martinez*, the court prescribed three factors to consider when determining if a substantial right was affected: "(1) severity of the misconduct, (2) curative measures adopted to cure the misconduct, [and] (3) the certainty of conviction absent the misconduct." *Id.* (citing *Mosely v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

### 1. Severity of the Misconduct

The severity of the State's conduct is consistent with a plea for law enforcement and the culture of rape evolving in this country. *See Martinez*, 17 S.W.3d at 693. The State's argument outlined the thought process that young, intoxicated women were open targets for men. The only difference between Ramos and the individual that garnered national attention was the level of privilege endowed upon the Stanford student. This argument must be considered in light of defense counsel's closing argument that "[A.F.] wasn't unconscious and she didn't resist." He argued that A.F.'s injuries were consistent with people that had rough sex. He asked, "where [were] the signs of physical force?" He argued that "A.F. could not have performed the acts she admit[ted] to if she was unconscious." "She was aware." He even contended the bruises are "signs of consent, not violence." We, therefore, conclude the State's argument that A.F.'s inability to consent due to intoxication or unconsciousness was an entirely legitimate point to raise before the jury. Therefore, assuming the State's argument was improper for referencing facts outside the record, we conclude the severity of the misconduct was minor.

### 2. Curative Measures

Because the trial court overruled the objection, the trial court did not provide a curative instruction to the jury. *See id.* at 692. Yet, there is nothing in the record to suggest the prosecutor highlighted the Stanford rape case evidence any more than the one time during the closing argument.

*3.      Certainty of Conviction*

Finally, we consider the certainty of the conviction absent the misconduct.  In its simplest terms, this case turned on whom the jury believed.  If the jury believed Ramos, that A.F. consented to the sexual acts, and that he stopped when she hesitated, then the prosecutor's comments would have had little weight on the jury's verdict.

After carefully considering the entire record, we conclude the State's closing argument did not affect Ramos's substantial rights.  Even assuming the jury argument was improper, we conclude, considering the evidence supporting Ramos's conviction, the error associated with the improper argument was harmless.  Therefore, we overrule this issue.

## CONCLUSION

Having overruled each of Ramos's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Do Not Publish