

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00813-CR

Ruby **RUIZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR7335
Honorable Kristina Escalona, Judge Presiding

Opinion by: Irene Rios, Justice

Sitting: Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: November 13, 2024

AFFIRMED

In a single issue, appellant Ruby Ruiz challenges the legally sufficiency of the evidence to support her conviction for aggravated robbery as a repeat felony offender. *See* TEX. PENAL CODE ANN. §§ 12.42(c)(1), 29.03(a)(2), (b). We affirm.

### BACKGROUND

Ruiz was arrested and charged with aggravated robbery after entering a convenience store/restaurant (the "store") with a gun, yelling and threatening people, then taking cash and

cigarettes from the cashier. *See id*. § 29.03(a)(2), (b). Because aggravated robbery is a first-degree offense, and Ruiz had been convicted of a prior felony offense, Ruiz was also charged as a repeat offender. *See id.* §§ 12.42(c)(1), 29.03(b). If convicted of the aggravated robbery, Ruiz faced a minimum fifteen-year sentence and a maximum sentence of ninety-nine years or life. *See id.* § 12.42(c)(1). The jury found Ruiz guilty of committing the offense, and the trial court sentenced her to fifteen years in prison. Ruiz appeals.

### STANDARD OF REVIEW

In a sufficiency review, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in favor of the verdict to determine whether any rational factfinder could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Moreover, the standard of review "gives full play to the responsibility of the [factfinder] fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

In reviewing the sufficiency of the evidence, we should consider "'events occurring before, during[,] and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). Circumstantial evidence is as probative as direct evidence in establishing guilt, and we review circumstantial and direct evidence under the same standard of review. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). "Each fact need not point directly and independently

to the guilt of the [defendant], as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

"An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Our role "is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*.

### APPLICABLE LAW

"A person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a). "A person commits [robbery] if, in the course of committing theft . . . and with the intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(2). A robbery is aggravated if a person "commits robbery as defined in Section 29.02 and . . . uses or exhibits a deadly weapon[.]" *Id.* § 29.03(a)(2). A pistol or handgun is a deadly weapon per se under the Texas Penal Code. *See id.* § 1.07(a)(17)(A); *see also Williams v. State*, 567 S.W.2d 507, 509 (Tex. Crim. App. 1978).

Here, Ruiz contends the evidence is insufficient to prove the cashier was threatened or placed in fear of imminent bodily injury or death. *See* TEX. PENAL CODE ANN. § 29.02(a)(2). Specifically, Ruiz argues that because the cashier did not testify at trial, insufficient evidence exists to support this element of the offense and her conviction.

We note that section 29.02, written in the disjunctive, encompasses two types of threats made by the defendant: explicit threats and implicit threats that place the victim in fear. *See Howard v. State*, 333 S.W.3d 137, 138–39 (Tex. Crim. App. 2011); *see also* TEX. PENAL CODE ANN. § 29.02(a)(2) (providing the complainant can be explicitly threatened *or* placed in fear of imminent bodily injury or death) (emphasis added). For a jury to find an individual was placed in

fear of imminent bodily injury or death, it is not necessary that actual threats were made, "any actual or perceived threat of imminent bodily injury will satisfy this element of the offense." *Howard*, 333 S.W.3d at 138; *see also Burgess v. State*, 448 S.W.3d 589, 601 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (holding factfinder may conclude an individual perceived fear or was "placed in fear" in circumstances where no actual threats were conveyed by the defendant).

The crucial inquiry in determining whether a defendant has threatened another "is whether the [defendant] acted in such a manner as would, under the circumstances, portend an immediate threat of danger to a person of reasonable sensibility." *Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *see also Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006). "'So long as the [defendant's] actions are of such nature as in reason and common experience [are] likely to induce a person to part with his property against his will, any actual or perceived threat of imminent bodily injury will satisfy this element of the offense.'" *See Burgess*, 448 S.W.3d at 601 (quoting *Howard*, 333 S.W.3d at 138).

The act of pointing a gun at an individual is, by itself, threatening conduct. *Boston*, 373 S.W.3d at 840. However, the defendant need not expressly threaten another or display a weapon to commit robbery. *Williams*, 827 S.W.2d at 616. "It is sufficient to constitute robbery if the [defendant] places the complainant in fear of bodily injury or death to the degree that reason and common experience will likely induce the complainant to part with his property against his will." *Pitte v. State*, 102 S.W.3d 786, 792–93 (Tex. App.—Texarkana 2003, no pet.) (citations omitted); *see also Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). Moreover, "[t]he place-in-fear element of robbery does not require the victim to be hysterical or frightened to the extent of losing one's senses or control." *Houston-Randle v. State*, 499 S.W.3d 912, 915 (Tex. App.—

Houston [14th Dist.] 2016, pet. ref'd) (citations omitted). The threat, whether direct or implied, may be communicated verbally or by action or conduct. *See Jefferson v. State*, 346 S.W.3d 254, 257 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

### ANALYSIS

The cashier was not at trial to testify whether he was in fear of bodily injury or death during his encounter with Ruiz. Without this testimony, Ruiz contends the evidence is insufficient to prove the element of the offense that Ruiz threatened or placed the cashier in fear of imminent bodily injury or death. *See* TEX. PENAL CODE ANN. § 29.02(a)(2). Ruiz does not challenge any other element of the offense.

Despite the cashier not testifying, the manager and cook, Cruz, testified she was cooking in the kitchen the morning Ruiz came into the store. Cruz explained the cashier was working at the cashier station across from her at the front of the store. Cruz testified she heard commotion outside the store and then saw someone come into the store holding a gun. Initially, Cruz stated she did not see what the person with the gun did because she and a customer hid in a small utility room near the kitchen. Cruz peeked because she was scared something was going to happen to the cashier. Although she did not see Ruiz point the gun directly at the cashier, Cruz stated that Ruiz was holding the gun, threatening the cashier, and demanding money and cigarettes from him. Cruz described the cashier as very nervous when Ruiz was threatening him, and Cruz feared Ruiz was going to kill the cashier. The cashier gave Ruiz the money and cigarettes she demanded. As she was leaving, Ruiz pointed the gun at Cruz when she saw Cruz looking out from the utility room.

While Ruiz was inside the store, at least two people called 911. The 911 calls were played for the jury. Both 911 calls included people in distress calling and reporting that a woman with a gun was inside the store threatening people. The callers stated they were hiding from her but could

hear the woman yelling, who can be heard in the background of the calls. One caller pleaded for the police to hurry because Ruiz was going to "kill somebody."

The store also had surveillance cameras. The San Antonio Police Department obtained some of the video recordings that were admitted into evidence and played for the jury. Although the videos contain no audio, State's exhibit 4 shows the outside of the front of the store and depicts Ruiz walking into the store with a gun in her hand and then exiting the store soon thereafter still holding the gun. State's exhibit 5 is a video from inside the store. As Ruiz walks into the store holding the gun, people scatter and hide. The video footage shows Ruiz at the cashier's station while holding the gun and taking money and cigarettes from the cashier. At one point, Ruiz points the gun towards the corner of the kitchen area where Cruz reported hiding from Ruiz.

Several San Antonio Police Department officers and detectives involved with the case also testified at trial. The arresting officer, Officer Jose Alfredo Lopez, explained he was the first officer on the scene. When he arrived, he was directed by a woman to a parked vehicle and told Ruiz was inside. Upon approaching the vehicle, Officer Lopez saw Ruiz sitting in the driver's seat. Officer Lopez handcuffed Ruiz, and with the assistance of another officer, removed Ruiz from the vehicle and put her in his patrol vehicle. Despite Ruiz denying she had a gun, one was found inside the vehicle behind the front passenger seat. Two additional video recordings were shown to the jury: one from Officer Lopez's body camera depicting his encounter with Ruiz and the second from another officer's body camera showing the discovery of the gun. The jury also saw the video of an officer searching Ruiz and finding the money and cigarettes she took.

Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably concluded that Ruiz, while committing theft of money and cigarettes, and with the intent to obtain or maintain control of the money and cigarettes, intentionally or knowingly

threatened the cashier or placed him in fear of imminent bodily injury or death. *See id.* §§ 29.02(a)(2), 31.03(a); *see also Jackson*, 443 U.S. at 319 (enabling factfinders to draw reasonable inferences from basic facts to ultimate facts). The jury could have also reasonably concluded that Ruiz used or exhibited a firearm during the commission of the robbery. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(17)(A), 29.03(a)(2).

We conclude the evidence is sufficient to support the jury's verdict that Ruiz committed aggravated robbery. *See id.* § 29.03(a)(2); *see also Nowlin*, 473 S.W.3d at 317; *Hooper*, 214 S.W.3d at 13.

We overrule Ruiz's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

Irene Rios, Justice

DO NOT PUBLISH